**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: | Case No. 17-01130-jw |
| Connie Lynette Hardwick, | Chapter 11 |
| Debtor. | |
| In re: | Case No. 17-01132-jw |
| Double J Farms, LLC, | Chapter 11 |
| Debtor. | |

# CONNIE LYNETTE HARDWICK AND DOUBLE J FARMS, LLC AMENDED PLAN OF REORGANIZATION DATED, November 21, 2017

## TABLE OF CONTENTS

1   SUMMARY ................................................................................................................ 2
2   PLAN FUNDING ....................................................................................................... 6
3   CLASSIFICATION OF CLAIMS AND INTERESTS ........................................... 16
4   ALLOWANCE AND DISALLOWANCE OF CLAIMS ....................................... 29
5   PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 31
6   MEANS FOR IMPLEMENTATION OF THE PLAN ........................................... 32
7   GENERAL PROVISIONS ....................................................................................... 33
8   DISCHARGE ............................................................................................................ 34
9   JURISDICTION ....................................................................................................... 35

**The Plan represents a legally binding arrangement and should be read in its entirety, rather than relying on the summary in this Disclosure Statement. Approval of the Disclosure Statement by the United States Bankruptcy Court does not constitute approval by the Bankruptcy Court on the merits of the Plan.**

**EXCEPT WHERE SPECIFICALLY STATED OTHERWISE, THE PLAN HAS BEEN PREPARED BY THE DEBTOR AND HAS BEEN PREPARED BASED ON INFORMATION AVAILABLE TO THE DEBTOR. NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY THE VALUE OF THE ASSETS OF THE DEBTOR) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.**

## *1   SUMMARY*

1.01   Definitions

    A.   <u>Acceptance</u> - A specific class of claims has accepted a plan when such plan has been accepted by those voting individual creditors in that class that hold at least two-thirds (2/3) in amount (of money), and more than one-half (1/2) in number (greater than 50%) of the voting individual allowed claims of that class of creditors. A class of interest has accepted a plan if such plan has been accepted by holders of such interest that hold at least two-thirds (2/3) in the amount of the allowed interest of such class held by holders of such interest (i.e., number of shares held by shareholders or partners) that have voted in confirmation of such plan. It is important to note that computation in the confirmation voting process is based only on the total amount of claims actually voting rather than on claims proven and allowed. Notwithstanding any other provision of this section, a class that is unimpaired under this Plan is deemed by law to have accepted this Plan, and solicitation of acceptances concerning such class is not otherwise required.

    B.   <u>Approved Claim</u> -Shall mean all claims or interest proven and allowed by the Court, under the Code, excluding interest, carrying charges, penalties, late charges, and other such add-on costs, attorney's fees, and other charges for collection of claims.

C. <u>The Case</u> - Shall mean these proceedings under Chapter 11 and the proceedings of Double J Farms, LLC, the consolidated Debtors in possession.

D. <u>Claim(s)</u> - Shall mean any right to payment from the Debtor held by any person or entity.

E. <u>Chapter 7</u> - Shall mean a case administered under the Chapter of the Code, 11 U.S.C. §701, et seq., whereby parties identical to Debtor, with identical assets and liabilities, have their assets liquidated.

F. <u>Chapter 11</u> - Shall mean a case being administered under 11 U.S.C. §1101, et seq., for the reorganization of the indebtedness of the Debtors.

G. <u>The Code</u> - Is 11 U.S.C. §101, et seq.

H. <u>Confirmation</u> - Of this Plan means the Order issued by the Court implementing the Plan after it finds that the Plan: 1) has been accepted by the requisite number of creditors eligible to vote thereon, 2) is feasible, 3) is fair and equitable, and 4) meets all requirements of 11 U.S.C. §1123.

I. <u>Consummation</u> – Of the Plan is final when any payments required by the Plan and/or transfers contemplated by the Plan have been commenced.

J. <u>The Court</u> - Shall mean the United States Bankruptcy Court for the District of South Carolina.

K. <u>Creditor</u> – Shall have the meaning proscribed by 11 U.S.C. § 101(10).

L. <u>The Debtor</u> - Shall mean Connie Lynette Hardwick and the consolidated debtor Double J.

M. <u>Disbursing Agent</u> - Is that agent empowered by the Court to receive the funds necessary to carry out the provisions of the Plan. Subject to the approval of the Court, Debtor, or her attorney, will serve as her disbursing agent.

N. <u>Disclosure Statement</u> – Shall mean the Amended Disclosure Statement filed with this Court on  November 21, 2017, or any amended subsequently Filed Disclosure Statement under 11 U.S.C. § 1125.

O. <u>Double J</u> - Shall mean the substantively consolidated Debtor, Double J Farms, LLC (Case No 17-01132-jw).  Double J's bankruptcy was substantively consolidated with this Case on April 14, 2017.

P. <u>Effective Date</u> - Of this Plan shall be thirty (30) days after the date on which the Plan is confirmed.

Q. <u>Filing Date</u> - Of this case and the substantively consolidated debtor, Double J Farms, LLC (Case No. 17-01132-jw) were March 7, 2017.

R. <u>Impaired Class</u> - Shall mean any class of claims which is affected by the Plan of Reorganization, and where rights are adversely affected by this Plan of Reorganization.

S. <u>The Plan</u> - Shall mean this Debtor's Amended Plan of Liquidation under chapter 11, filed with the Court on November 21, 2017, including any subsequent amendments or addendums thereto.

T. <u>Proof of Claim or POC</u> - which refers to any claims filed by a creditor in this, or the Double J case.  Referring to a POC shall not indicate that the Debtor is accepting that as a valid claim.

U. <u>Priority Claims</u> - Shall mean all claims entitled to priority status under §507 of the Code. This includes, generally, all wages as allowed by the Debtor, all taxes owing to the United States and State or local taxing authorities, funds deposited with the Debtor, all debts incurred and unpaid since the filing of this case, and all statutory costs assessed or assessable by the Court, such as expenses and costs of administration of the estate.

V. <u>The Rules</u> - Shall mean the Bankruptcy Rules, the Federal Rules of Civil Procedure, and the Local Rules of the Court.

W. <u>Schedules</u> – Shall mean the Debtors schedules filed on March 21, 2017, and as amended on April 17, 2017, and as further amended on August 25, 2017.

X. <u>Secured Claims</u> - Shall mean all claims fully or partially secured by real estate mortgages, security agreements, chattel mortgages, lease-purchase agreements, liens or other indentures entitled to secured status under the Code.

Y. <u>Substantial Consummation</u> – Shall refer to the date (90) days after the Debtor's Plan has been confirmed, subject to the conditions set out below in section 4.01.

Z. <u>Unimpaired Class</u> - Shall mean any class of claims which are not affected by this Plan of Reorganization and which is entitled to, and shall receive under this Plan, full payment pursuant to contract or agreement with the Debtor, or which meets the definition of the Bankruptcy Code.

AA.      <u>Unsecured Claims</u> - Shall mean all claims, provable and allowable, of the Debtor, other than Secured and Priority Claims.

1.02 <u>Background</u> - The history and background of the Debtor are provided in the Debtor's Disclosure Statement filed on  November 21, 2017.

1.03 <u>Financial Condition of the Debtor -</u> The current financial condition of the Debtor is set forth in the Schedules and monthly operating Reports filed with the Court.  A detailed budget of the Debtor's income and expenses is attached to the Plan as Exhibit A.   A detailed liquidation analysis is attached to the Plan as Exhibit B.

1.04 <u>The Debtor's Reorganization Proceedings under Chapter 11</u>- The information found in the Disclosure Statement provides an adequate history as to the proceedings by the Debtor in this reorganization.

1.05 <u>Plan Proponents</u> - This Plan of Reorganization through partial liquidation (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Connie Lynette Hardwick (the "Debtor") and Double J from the sale of a large portion of the Debtor's real estate holdings.  A description of these holdings, estimated values, and secured claims is disclosed later in Section 2 below.

1.06 <u>Class Summary</u> - This Plan provides for 20 classes of Secured Claims, 1 class of Administrative creditors, 1 class of priority claimants, two classes of unsecured creditors, and an equity class.  Unsecured creditors holding allowed claims will receive distributions that the proponent of this Plan has valued at approximately 100 cents on the dollar.  This Plan also provides for the payment of administrative and Priority Claims.   The administrative claims will be paid as follows 1) professional claims will be paid from the

sale of unencumbered assets upon approval of the professional claims and 2) the quarterly fees payable to the US Trustee's office will be paid when they come due from funds received by the Debtor through her regular income.

1.07   <u>Creditor Summary</u> - All Creditors and equity security holders should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claim.  A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors and equity security holders has been circulated with this Plan.  Your rights may be affected.  You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)

1.08   <u>Summary of Plan</u> – The Debtor's proposed Plan consists of liquidating a significant portion of her encumbered and unencumbered real property assets to generate the necessary funds to repay her creditors in full.  The Debtor intends to continue her marketing efforts to sell her assets and will be listing additional assets for sale to further deleverage her balance sheet.  The Debtor believes she can sell enough assets to pay her creditors in full within 12 months of October 1, 2017.  Debtor intends to remain current on her secured debt obligations. The Debtor may also sell resources from her properties to make her creditors whole.

As part of this process, the Debtor will be dealing with Claims objections and the adversary filed by creditor Richard Cooke.  Debtor and Mr. Cooke have already conducted settlement discussions and have entered into a settlement agreement.  This agreement must be approved by the Bankruptcy Court and Mr. Cooke must receive financing for the settlement.

Debtor is currently considering making price reductions to her properties listed for sale to further encourage potential buyers to purchase the properties.  Debtor is also in the process of listing or evaluating listing, additional properties to expedite the repayment of her creditors.  See Section 4 above.  Debtor will utilize her income to fund the regular payment to her secured creditors as described in more detail in the plan.  That income will also go to fund the Debtor's living expense and may be used to repay unsecured creditors.

The Debtor currently estimates that she has property worth between $4.7 million and $6.7 million. This property is secured by debts which total approximately $2.46 million dollars. The Debtor anticipates the resolution of $1.92 million dollars of secured debt through immediate and mediate sales. The Debtor will continue making payments on approximately $546,000 (some payments will be made by her children). The Debtor estimates that she will be able to sell approximately $2.1 Million of her property to repay the $1.92 million in secured debts (some will be paid through the settlement with Richard Cooke). The sale of property will also be used to pay her estimated Administrative claims of $70,000 to $80,000 (class 21), her $46 to priority creditors (class 22 and subject to change based on her 2016 taxes), and between $50,000 and $150,000 to unsecured creditors (Class 23). If the Debtor can sell the majority of her properties and she is successful in her claims objections and resolving her claims objections she believes that she will be able to pay her creditors, in full.

## 2   *PLAN FUNDING*

2.01   Primary Funding - Debtor proposes to retain the assets listed as exempt in her bankruptcy schedules, her residence and surrounding property, as well as her household goods and furnishings[1], and the 2013 GMC Sierra and the 2013 GMC Denali. Debtor is retaining her residence, so she has a place to live and to take advantage of the home mortgage interest deduction. She is retaining the 2013 GMC Sierra as her primary vehicle since she is selling the other cars she owns. The 2013 Denali is being retained as she co-owns it with her step-father and it is his primary method of transportation since he needs a special vehicle to accommodate his disability. Section 2.02 of the Plan provides a list of the properties that the Debtor intends to sell. Debtor asserts that the value of these properties exceed the total debts she owes. Debtor proposes to sell her properties until she pays off all of her valid, authorized claims. These claims will be paid in order of priority set forth in the Code and according to the information set out below in Section 3 of the Plan. Debtor asserts that the sale of her property is an adequate means of implementation of this Plan under 11 U.S.C. § 1123(a)(5).

---

[1] See below for more details about the retention of non-exempt personal property.

The Debtor will remain current on her Secured Debts according to terms of the obligations, or based on the modifications set forth in that secured creditor class listed in Section 3 of the Plan. The secured obligations on 1641 Quail Trail, the 2016 Ford Mustang, the 2016 Land Rover Evoque, the 2016 Chevy Camaro, and the 2016 Dodge Charger will be paid by the Debtor's children as described below starting in November.

In the event the Debtor can sell an unencumbered asset or an asset with equity beyond the liens on the property, the Debtor will distribute those funds according to the priority scheme set out in the Code. If the unencumbered asset or equity can pay all the administrative, priority, and unsecured claims, the Debtor will then distribute the remaining funds *pro rata* to any remaining secured creditors whose collateral has not been sold ("*Pro Rata* Pre-Payment"). This payment of secured debt early will pay down those claims more quickly than waiting for the collateral to sell. This *Pro Rata* Pre-Payment may exclude the lenders on the Debtor's residence so she can continue to utilize the home mortgage interest deduction and maintain her residence. Rather than making the *Pro Rata* Pre-Payment, the Debtor may elect to maintain payments on obligations which are current and must do so with the consent of the secured creditor.

<u>The Debtor estimates that the sale of her property will occur within 12 months of October 4, 2017. The Debtor is marketing these properties and regularly evaluates the market conditions for each property to determine if pricing needs to be adjusted. Debtor will not distribute payments to the unsecured creditors until the following events have occurred:</u>

1. <u>This Plan is approved by the Bankruptcy Court, and such order is a final order;</u>

2. <u>The Claims Bar Date referenced in Section 4.04 below has passed;</u>

3. <u>All claims objections have been resolved;</u>

4. <u>Debtor's counsel has received the payment from the sale of property, and such payment is considered to be 'good funds' as required under the South Carolina Rules of Professional Ethics number 412. This period is dependent on the manner of payment and Debtors' counsel's judgment of when such funds are 'good funds.'</u>

5. <u>The Debtor has concluded the adversary litigation against Richard Cooke, adversary case no 17-80091-jw.</u>

<u>Once these five criteria are met Debtors' counsel will distribute the funds according to the
terms proposed herein, within 30 days.</u>

The Debtor's daughters are attempting to monetize their interest in the 185[2] acres on Valley
Forge Rd.  Once they do so, they will be providing a payment to the Debtor for the material
support she has provided to them on the 1641 Quail Trail property over the past several years.
The Debtor must prepare a calculation of those payments and will submit it for repayment
once she has finished that calculation and the property has been monetized. The Debtor
currently holds property in trust for her two children, the 1641 Quail Trail Property, 1200
Naylor, and the 185 Acres Valley Forge Rd.  A portion of the 185 Acres was sold, and the
funds are being used to make the Children's payments on the cars and the mortgage on Quail
Trail.  If these funds run out and no other source of funds is available from the Children, the
Debtor will have to resume payments on the Quail Trail property, because she is obligated
on the debt.  Debtor will require the Children to repay any amounts she pays on their behalf
from the sale of their property.  She may also elect to sell the Quail Trail property if it appears
that the payments will continue for longer than a period of 3 months.

The Debtor has already listed numerous properties for sale and is in the process of
interviewing a realtor to list the properties she owns in Tennessee, 2127 & 2129 Waldens
Creek Rd.  Debtor is also examining the possible sale of 407 34th Ave N, in N. Myrtle Beach,
SC[3].   Debtor estimates that these properties could fetch close to $1 million before taxes and
costs of sale, resulting in a significant reduction in her debts.

Debtor is also working to sell multiple pieces of personal property.  These include the 2014
Chevy Corvette, the Pontiac GTO, the Studebaker, the Harley, the Crest Pontoon Boat, the

---

[2] The daughters have already sold 13 acres of the 185 acres, and the 185-acre reference is to
conform with the property description on the original schedules.  The proceeds from the sale of
the 13 acres went to the Daughters so they could pay their living expenses and pay future
obligations.
[3] 407 34th Ave is held in a revocable trust in the Debtor's name.  In the event, she were to sell
these properties the funds would be used to repay her creditors.

Suzuki, the San Pan Pontoon boat, and the 2011 GMC Sierra Denali. Pre-confirmation the Debtor has attempted to sell these assets, but buyers have been unwilling to make an offer and wait the 30 days necessary for approval of the sale under 11 U.S.C. § 363. The Debtor believes that post-confirmation she will have much more success in selling these assets as she will not have to sell under 11 U.S.C. § 362 and wait the necessary 28 days to have the sale approved. The Debtor will file a notice of sale after the sale of these assets to provide the creditors information relating to the sale and the benefit to the estate.

The Debtor will retain the real property where her residence is located and would like to hold onto the property that surrounds that house at 4277 Joyner Swamp Road. This property is rural and would likely only sell as a part of her residence. Further, Debtor is concerned that the sale of the surrounding property could diminish her property value as the last sale of any significant acreage in her immediate area became a trailer park.

Debtor will also retain the use of the various farm equipment to maintain the Florence property so that it will be more attractive to a buyer. The Debtor will also retain the 2013 GMC Sierra as her primary vehicle so she can visit the Florence property. She owns the 2013 GMC Denali 50/50 with her step-father, Joseph Cooke[4], and it is his primary transportation. Debtor intends to sell this asset when he no longer requires transportation.

Debtor is also pursuing alternatives to selling her properties, including allowing the sale of resources from her property. This sale of resources would pay in part, or in whole the Debtor's creditors according to the terms of the Plan. Any sale of resources would be made through a motion pursuant to 11 U.S.C. § 363 to provide notice to the creditors of the estate, even after confirmation. The sale of any resources from the property would go to repay the lien holder, to the extent there is a lien on those resources, and then to pay creditors according to the order of priority as set out in the Code and this Plan.

---

[4] Joseph Cooke is not related to Richard Cooke.

All sales of real property, or resources, contemplated by the Plan shall remain subject to notice pursuant to 11 U.S.C. § 362 to all creditors and parties in interest, who shall be afforded an opportunity to object to such future sales, and shall be contingent upon Court approval.

If, at any time during the life of the Plan, the Debtor should become deceased, the Plan shall immediately be treated as a liquidating Plan and all non-exempt assets to be liquidated under the Plan will continue to be liquidated for the benefit of the creditors of the estate.

*2.02*  <u>Tangible Assets</u> – A detailed list of the Debtor's assets is available in the Schedules filed on March 21, 2017, April 17, 2017, and August 25, 2017.  The real property assets and large personal property assets are listed below.

| TMS # | Address | Estimated Value | Secured Creditor | Estimated Secured Claim | Equity after Secured | Listed for Sale | List Price |
|---|---|---|---|---|---|---|---|
| 0550001090 | 40.24 acres Joyner Swamp Road, Gallivants Ferry, SC (Horry Co.) | $188,220.00 | ArborOne | | $188,220.00 | no surrounds primary residence | |
| 1550000016000, 1550000011000 | 121 acres in 2 tracts, Gresham, SC (Marion Co.) | $177,150.00 | ArborOne | | $177,150.00 | Yes (under Contract) | $137,000.00 |
| 0440001028 | 38 Acres Barnhill Road, Gallivants Ferry, SC (Horry Co.) | Sold | ArborOne | | $- | Sold | |
| 00370-01-011 (785.57 acres), 00370-01-001 (375 acres), 00370-01-007 (14.42 acres) | 1174.99 Acres of Land (in 3 separate tracts), Florence, SC (Florence Co.) | $3,969,200.00 | ArborOne | | $3,969,200.00 | Yes | $3,969,000.00 |
| 0130001025 | 108 acres Duford, Nichols, SC (Horry Co.) | $232,000.00 | ArborOne | | $232,000.00 | Yes | $260,000.00 |
| | | **Total for ArborOne** | **ArborOne** | **$1,390,946.81** | **$3,175,623.19** | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0550001169 | 4277 Joyner Swamp Rd, Gallivants Ferry, SC - PRIMARY RESIDENCE (Horry Co.) | $1,200,000.00 | **Chase Mortgage and NBSC** | **$95,655.00** | **$1,104,345.00** | No Primary Residence | |
| 1450545020 | 2804 N. Ocean Blvd., North Myrtle Beach, SC (Horry Co.) | $900,650.00 | **First Reliance Bank** | **$391,000.00** | **$509,650.00** | No subject to litigation | |
| 09202805000092(parcel ID) | 2139 Walden's Creek Rd, Sevierville, TN (Sevier Co.) | $375,000.00 | **Nancy Pickelsimer** | **$45,583.00** | **$329,417.00** | Debtor is delaying the listing to see if a contract on the Florence Property will come through | |
| 0550001196 | 4270 and 4272 Joyner Swamp Road, Gallivants Ferry, SC (Horry Co.) | $127,500.00 | | | $127,500.00 | no surrounds primary residence | |
| 09202803000092 (parcel ID) | 2127 Walden's Creek Rd, Sevierville, TN (Sevier Co.) | $325,000.00 | | | $325,000.00 | Debtor is delaying the listing to see if a contract on the Florence Property will come through | |
| 0550001193 | 4677 Joyner Swamp Rd, Gallivants Ferry, SC (Horry Co.) | $141,000.00 | | | $141,000.00 | Debtor intends to sell only if she cannot sell other properties first | |
| 1450125007 | 407 34 Ave N. North Myrtle Beach, SC | $325,000.00 | | $- | $325,000.00 | No- Debtor believes the property is more valuable as a rental | |
| 0550001049 | 27 Acres Joyner Swam Rd, Gallivants Ferry, SC | $148,500.00 | | | $148,500.00 | Listed for Sale | $148,500.00 |
| 0860003046 | Loris (Horry Co.) | $18,110.00 | | | $18,110.00 | No cannot sell because debtor only owns 50% and co-owner does not want to sell | |
| | Total | $8,127,330.00 | | $1,923,184.81 | $6,279,395.19 | | |

| **Not owned by either Debtor but listed on schedules** | | | | | | | |
|---|---|---|---|---|---|---|---|
| TMS # | Address | Estimated Value | Secured Creditor | Secured Claim | Equity after Secured | Listed for Sale | |
| 0690001011 | 185 Acres Valley Forge Rd, Aynor, SC (Horry Co.) | $844,322.00 | | | | Yes | $755,500 estimated value after sale of 13 acres |
| 1810503014 | 1200 Naylor Ave, Myrtle Beach, SC (Horry Co.) | $75,250.00 | | | $75,250.00 | No | |
| 1971201010 00 (parcel ID) | 1641 Quail Trail, Manning, SC (Clarendon Co.) | $352,000.00 | Anderson | $232,358.00 | $- | No | |
| | Total | **$8,127,330.0 0** | | **$2,155,542.81** | | | |

| **Vehicles** | | | | | | |
|---|---|---|---|---|---|---|
| Vehicle Make Model Year | Value | Secured Creditor | Estimated Secured Claim | Equity | To be sold | Estimated Sale Price |
| GMC Sierra 2013 | $13,097.00 | **Ally** | **$5,706.00** | $3,695.50 | No Primary Vehicle | |
| G Champion DR 2 Door, Study, 1939 | $10,000.00 | Anderson | | $10,000.00 | Yes | $10,000.00 |
| Pontiac GTO 1965 | $41,000.00 | Anderson | | $41,000.00 | Yes | $41,000.00 |
| Harley Trike 2009 | $17,000.00 | Anderson | | $17,000.00 | Yes | $17,000.00 |
| | Total Anderson | **Anderson** | **$39,289.00** | **$28,711.00** | | |
| GMC Denali 2013 | $30,550.00 | Citizens Bank NA | $6,708.00 | $11,921.00 | No but will when Joseph Cooke no longer uses | |
| John Deere 7230 | $32,500.00 | The Citizens Bank | | $3,647.00 | No using to maintain properties | |
| Enclosed Cargo Craft Trailer | $9,000.00 | The Citizens Bank | | $9,000.00 | No - used to maintain farm | |
| Hardee Rotary Cutter | $4,500.00 | The Citizens Bank | | $4,500.00 | No - used to maintain farm | |
| Enclosed 2010 trailer | $8,000.00 | The Citizens Bank | | $8,000.00 | No - used to maintain farm | |

| Item | Value | Bank | Balance | Net | Keep? | Amount |
|---|---|---|---|---|---|---|
| Gooseneck Cargo | $2,800.00 | The Citizens Bank | | $2,800.00 | No - used to maintain farm | |
| John Deere 4000 | $8,500.00 | The Citizens Bank | | $8,500.00 | No using to maintain properties | |
| | | **The Citizens Bank** | **$28,853.00** | **$7,594.00** | | |
| Chevy Corvette 2014 | $44,517.00 | The Citizens Bank | $34,581.00 | $9,936.00 | Yes | $44,517.00 |
| 2nd on Chevy Corvette | | Conway National bank | $17,645.64 | $(7,709.64) | Yes | $- |
| Ford Mustang 2016 | $28,000.00 | Conway National bank | $12,092.99 | $15,907.01 | No - paid by Bruce Hilburn | |
| GMC Sierra 2011 | $15,913.00 | Conway National bank | | $15,913.00 | Yes, may sell to brother who drives | $15,913.00 |
| Dodge Challenger 2016 | **$27,989.00** | **Conway National bank** | | **$27,989.00** | No - Being paid by Brandon Grice | |
| | **Total** | **Conway National bank** | **$17,219.49** | **$26,682.51** | Debtor is not obligated on the Debt but owns the two vehicles | |
| Chevy Camaro 2016 | $32,272.00 | Conway National bank | | $- | No - being paid by Jamey Hicks Hilburn.  Debtor not obligated on debt but owns vehicle | |
| Range Rover Evoque 2016 | $39,412.00 | Conway National bank | | $- | No - being paid by Jordan Hicks Debtor not obligated on debt but owns vehicle | |
| Crest Pontoon Boat 2016 | $30,000.00 | Conway National bank | | $30,000.00 | Yes | $30,000.00 |
| San Pan Pontoon Boat 2016 | $7,500.00 | Conway National bank | | $7,500.00 | Yes | $7,500.00 |
| | Total Conway | **Conway National bank** | **$52,442.84** | **$(14,942.84)** | | |
| Combine | $80,000 | | $9,667.81 | | | |
| Combine | $80,000.00 | | $19,468.00 | | | |
| | Total Conway | **Conway National bank** | **$29,135.81** | **$50,864.19** | Claim to be paid by R Cooke | $- |
| Suzuki C-50 2006 | $2,300.00 | | | $2,300.00 | Yes | $2,300.00 |

| | | | | | |
|---|---|---|---|---|---|
| Trailer with hitch | $1,500.00 | | | $1,500.00 | No - used to maintain farm |
| Flatbed 16-foot Trailer | $1,200.00 | | | $1,200.00 | No - used to maintain farm |
| Polaris ATV | $3,500.00 | | | $3,500.00 | No needs repairs |
| Polaris ATV (6 wheeler) | $2,000.00 | | | $2,000.00 | No needs repairs |
| New Holland Rustler | $2,000.00 | | | $2,000.00 | No - used to maintain farm |
| Carryall | $2,000.00 | | | $2,000.00 | No needs repairs |
| Carry All #2 | $2,000.00 | | | $2,000.00 | No needs repairs |
| Burroughs | $6,000.00 | | | $6,000.00 | No - used to maintain farm |
| Grasshopper | $7,500.00 | | | $7,500.00 | No - used to maintain farm |
| Taylor Made Ground Disk | $2,500.00 | | | $2,500.00 | No - used to maintain farm |
| 32 Blade Disk | $2,500.00 | | | $2,500.00 | No - used to maintain farm |
| Hardee Offset Cutter | $10,500.00 | | | $10,500.00 | No - used to maintain farm |
| Box Blade 4 foot | $500.00 | | | $500.00 | No - used to maintain farm |
| 43 Corrals | $16,555.00 | | | $16,555.00 | No - used to maintain farm |
| 40-foot storage boxes | $4,000.00 | | | $4,000.00 | No - used to maintain farm |
| Farm equipment wrongfully held by a third party | $19,500.00 | | | $19,500.00 | Subject of potential litigation |
| King 16 blade disk | $500.00 | | | $500.00 | No - used to maintain farm |
| Hardee 6x16 Trailer | $1,200.00 | | | $1,200.00 | This may be a duplicate |
| | $650,305.00 | Claims Owed by Debtor | $214,361.29 | | |

2.03 <u>Intangible and Tangible Assets and Assets Being Withheld From Sale</u> - The Debtor owns

numerous household goods that are not exempt.   The Debtor only intends to sell those

household items that are sold incident to a sale of the real property where those items are located, or if the Debtor has extinguished her real assets and creditors remain unpaid.

The Debtor has numerous claims against individuals that are listed on question 33 of Schedule B.  Upon confirmation of this Plan; the Debtor intends to begin pursuing those causes of action to the extent the Debtor has a valid claim.  Debtor is also investigating causes of action under 11 U.S.C. §§ 547, 548, 549, and 550.  The Debtor has not completed its analysis of potential chapter 5 causes of action in this matter.  **Debtor is reserving her rights to pursue those causes of action post-confirmation.  In the event the Debtor can recover funds from these various causes of action, the funds would be used to repay her creditors in order of priority.  Certain claims may be related to insurance claims, and to the extent that those payments are to repair property, those funds would be used to repair those items.   The Debtor will have 60 days from the Effective Date of the Plan to pursue these actions.**

The Debtor also has numerous life insurance policies that have been claimed as exempt.  The Debtor has used and intends to continue to use, the cash portion of those whole life policies to maintain her monthly secured obligations.  As she can deleverage her balance sheet, the Debtor will allow those whole life policies to build up value to the extent those funds are not needed for necessary living expenses.

Debtor is committing to contribute her income to maintain her living expenses, and any excess income will be used to pay creditors ongoing Secured Claims, and any income that remains after paying the prior expenses will be used to pay any remaining Class 21, 22 and 23 claims.  The Debtor's budget is variable, and as time progresses, she hopes that she will be able to reduce her monthly obligations such that she can contribute more income to paying down debt rather than debt service.  The Debtor's primary non-exempt source of income is from her ownership in River Neck Acres, the rental homes in Tennessee, the 1200 Naylor property in Myrtle Beach, and periodic residual income from old insurance contracts. The Debtor's income may decrease if she sells her rental properties, but those sale proceeds will still be used to pay down her debts.

## 3    *CLASSIFICATION OF CLAIMS AND INTERESTS*

3.01    <u>Class 1</u>.            <u>ArborOne, ACA ("ArborOne")</u>.                    <u>Secured Impaired</u>

ArborOne asserts a Pre-petition Claim against the Debtor in the approximate amount of $1,552,714.73, secured by multiple liens against the property of the estate.  As of October 4, 2017, the obligation owed to ArborOne was $1,390,946.81.  The obligation was reduced through the application of $101,884.74 that was held by ArborOne, the sale of 38 acres on Barnhill Rd which provided $85,534.32, and the application of patronage funds of $16,005.61.  ArborOne will be further paid down from the sale of the 118 Acres in Gresham SC which will pay approximately $122,000 to ArborOne.  That sale is expected to take place on November 11, 2017.

Debtor asserts that ArborOne is oversecured and proposes to make no payments to ArborOne for 12 months. Starting October 1, 2017, the Debtor will have one year to sell this property according to the terms and conditions imposed by ArborOne.  During this time interest will continue to accrue at the contract rate for each of the various notes. No default interest, penalties, or fees will be charged, only simple interest and necessary attorney's fees.

Debtor believes that ArborOne will be paid in full from the proceeds generated from the sale of the Debtor's property. ArborOne's claim shall survive until paid in full through the sale of the Debtor's assets or the refinancing of the obligation to ArborOne.

Debtor and ArborOne agree that the terms above do not cure the Debtor's default to ArborOne, but are temporary waivers of the default of the underlying agreements.

3.02    <u>Class 2</u>.            <u>First Reliance Bank ("FRB")</u>            <u>Secured Unimpaired</u>

FRB asserts a Pre-petition secured claims (POC 24 and 25) against the Debtor of approximately $363,614.76.  This debt is secured by an asserted first priority mortgage against the property located at 2804 North Ocean Blvd, N Myrtle Beach, SC 29582.  Debtor

intends to market and sell this property but cannot do so until it resolves the insurance issue below, and the claims of Richard Cooke. FRB also has a second mortgage on the same property for an obligation that totals $35,488.52. The total pre-petition secured claim asserted by First Reliance is approximately $399,103.28.

This loan is secured by the property that is the subject of the litigation filed by Richard Cooke (Adv. Case No. 17-80091-jw). The Debtor will stop payments to FRB until the settlement with Richard Cooke, described herein, is completed. The balance owed to FRB will be paid in full from that settlement. Any shortfall the Debtor will repay, and overpayment will be refunded to the Debtor.

Unless the settlement with Mr. Cooke is authorized, the Debtor must resolve his claim and the Debtor's insurance claim on the property (for damages suffered in October of 2016 as a result of Hurricane Matthew) before she can sell this property. Debtor submitted for insurance coverage due to this damage and that claim has initially been denied. Debtor is evaluating her next steps to address this denial. Even without the payment of the insurance claim, the Debtor believes that the value of the property exceeds the claim of FRB.

Other than as stated above, Debtor asserts that she has cured any defaults to FRB and will remain current on the underlying obligation. **The monthly payment on these note is $5,633.60 a month.**

3.03   Class 3.          Anderson Brothers Bank ("ABB")          Secured Unimpaired

ABB asserts a Pre-petition Secured Claim (POC 16) against the Debtor of approximately $232,358.63. This debt is secured by an asserted first priority mortgage against the property located at 1641 Quail Trail in Manning, SC. This property is held in trust by the Debtor for the benefit of her daughters under the will of their father. The property had a mortgage on it at the time it was inherited, and the two daughters wanted to retain the property. The Debtor refinanced the mortgage into her name because her daughters were minors. Going forward the two daughters will be paying this obligation, working to repair the property, and will repay the Debtor for amounts she spent to maintain this mortgage and for the

upkeep of the property. Debtor asserts that this property's value exceeds the debt. The Daughters have funds from the sale of their property to maintain their payments for the short term. If these funds run out and no other source of funds is available from the Children, the Debtor will have to resume payments on the Quail Trail property, because she is obligated on the debt. Debtor will require the Children to repay any amounts she pays on their behalf from the sale of their property. She may also elect to sell the Quail Trail property if it appears that she will have to make payments for longer than a period of 3 months.

Debtor does not believe that there are any defaults on the obligation to ABB but asserts that if there are, those defaults have been cured and the obligation will remain current through the payments that are to be made by her daughters. **The monthly payment on this note is $2,151.**

3.04   Class 4.          NBSC a Division of Synovis ("NBSC")          Secured Unimpaired

NBSC asserts a Pre-petition Secured Claim (POC 19) against the Debtor of approximately $52,712.79. This debt is secured by an asserted mortgage against the Debtor's residence located at 4277 Joyner Swamp Road, Gallivants Ferry, SC 29544. The Debtor will continue to make payments under the note and mortgage terms. Debtor asserts that this property's value exceeds the debt.

Debtor asserts that she has cured any defaults to NBSC and will remain current on the underlying obligation. This is the Debtor's primary residence, and she does not propose to modify this claim. **The monthly payment on this note is $835.13.**

3.05   Class 5.          Conway National Bank ("CNB")          Secured Impaired

CNB asserts a Pre-petition Secured Claim (POC 5) against the Debtor of approximately $51,979. This debt was previously secured with a Claim against a 2012 Free 23U Recreational Vehicle, and the collateral was substituted with a 2016 Crest Pontoon Boat and a 2016 San Pan Pontoon Boat. The Debtor will remain current on these payments until the

loan is paid in full or the collateral is sold to repay the debt. Debtor intends to sell this collateral to repay CNB.

This claim may be undersecured.  Any undersecured claim will be a class 23 claim.  Debtor asserts that she has cured any defaults to CNB and will remain current on the underlying obligation. **The monthly payment on this note is $416.66. This payment is made on an annual basis, and the annual payment is $5,000.00.**

3.06   Class 6.          Conway National Bank ("CNB")          Secured Unimpaired
CNB asserts a Pre-petition Secured Claim (POC 13) against the Debtor of approximately $20,015.  This debt is secured through a second lien against a 2014 Chevrolet Corvette.  The Debtor will remain current on these payments until the loan is paid in full or the collateral is sold to repay the debt.  Debtor is in the process of attempting to sell this property to pay off this obligation.

Debtor asserts that she has cured any defaults to CNB and will remain current on the underlying obligation until she sells the collateral. **The monthly payment on this note is $490.88.**

3.07   Class 7.          Conway National Bank ("CNB")          Secured Unimpaired
CNB asserts a Pre-petition Secured Claim (POC 7) against the Debtor of approximately $18,722.01.  This debt is secured with a Claim against a 2016 Dodge Challenger and has the 2011 GMC Sierra as additional collateral.  The Debtor will remain current on these payments until the loan is paid in full or the collateral is sold to repay the debt.  Debtor will not pay this obligation as it is a debt her children have agreed to pay.

Debtor's brother is interested in purchasing the GMC Sierra because he has primarily been the driver of this vehicle.  The Debtor is working with him to reach a fair market value sale. If a sale price can be agreed upon, the Debtor will notice the sale to all creditors and parties in interest, and it will be subject to Court approval. Debtor asserts that she has cured any

defaults to CNB and will remain current on the underlying obligation through payments to be made by her children. **The monthly payment on this note is $342.81.**

3.08   <u>Class 8.</u>          Conway National Bank ("CNB")                    <u>Secured Unimpaired</u>

CNB asserts a Pre-petition Secured Claim (POC 4) against the Debtor of approximately $16,653.12. This debt is secured by a Claim against a 2016 Ford Mustang. The Debtor's daughter will make payments on this debt as she is the primary driver of this car. Debtor asserts that this property's value exceeds the debt.

Debtor asserts that she has cured any defaults to CNB and her daughter will remain current on the underlying obligation. **The monthly payment on this note is $784.37.**

3.09   <u>Class 9.</u>          Conway National Bank ("CNB")                    <u>Secured Impaired</u>

CNB asserts a Pre-petition Secured Claim (POC 3) against the Debtor of approximately $13,624.65. This debt is secured with a Claim against a Combine and Attachments. The Debtor will stop payments to CNB until the settlement with Richard Cooke, described herein, is completed. The balance owed to CNB will be paid in full from that settlement. Any shortfall the Debtor will repay, and overpayment will be refunded to the Debtor.

Other than as stated above, Debtor asserts that she has cured any defaults to CNB and will remain current on the underlying obligation until the obligation is paid by Richard Cooke according to the settlement agreement. **The monthly payment on this note is $832.01.**

3.10   <u>Class 10.</u>          Conway National Bank ("CNB")                    <u>Secured Impaired</u>

CNB asserts a Pre-petition Secured Claim (POC 2) against the Debtor of approximately $24,237.89. This debt is secured with a Claim against a Combine and Attachments. The Debtor will stop payments to CNB until the settlement with Richard Cooke, described herein, is completed. The balance owed to CNB will be paid in full from that settlement. Any shortfall the Debtor will repay, and overpayment will be refunded to the Debtor.

Other than as stated above, Debtor asserts that she has cured any defaults to CNB and will remain current on the underlying obligation until the obligation is paid by Richard Cooke according to the settlement agreement. **The monthly payment on this note is $429.66 a month.  This payment is made on an annual basis, and the annual payment is $5,155.92**

3.11   Class 11.          Nancy Pickelsimer ("Mrs. Pickelsimer")          Secured Unimpaired

Mrs. Pickelsimer has a Pre-petition Secured Claim against the Debtor of approximately $45,583.  This debt is secured by a first priority mortgage against the property located at 2139 Waldens Creek Rd, Sevierville, TN. The Debtor will remain current on this payment until the loan is paid off or the collateral is sold to repay the loan.  Debtor asserts that the value of this property exceeds this creditor's obligation.

Debtor asserts that she has cured any defaults to Mrs. Pickelsimer and will remain current on the underlying obligation. **The monthly payment on this note is $1,210.92.**

3.12   Class 12.          The Citizens Bank ("Citizens")          Secured Impaired

Citizens assert a Pre-petition Secured Claim (POC 8) against the Debtor of approximately $28,853.45.  This debt is secured by the following property:

JOHN DEERE 7230 4WD Tractor

JOHN DEERE460

NEW HOLLAND Backhoe

Hardee Bushhog

Tye No-Till Planter

Cargo Craft Enclosed Trailer

Diamond Gauge Trailer

Debtor will continue to make the regular contract payments on this note until the Debtor sells the collateral or the note is paid in full through the term of the obligation or through other means.  Citizens collateral is currently being used to maintain the Florence property. Debtor may sell the collateral with the land (subject to approval by Citizens), sell it

separately, or maintain the payments if the Debtor retains some of the Florence property. Debtor asserts that the value of the Citizens' collateral exceeds the debt.

Debtor has a pre-petition default to Citizens and intends to cure this debt, and the debt below in Class 13.  The Debtor is currently working with Citizens to discuss the terms of this cure and to determine if the correct amount that must be Cured. The Debtor will supplement the terms of this cure payment at or before Confirmation of the Plan. The Debtor is proposing to cure the pre-petition and post-petition arrearage is $14,578.30.  The Debtor is proposing to bring this arrearage current by paying Citizens $1,249.68 per month for 12 months which will pay the arrearages in full plus 4.25% interest.  The Debtor will remain current on the underlying obligation payments while curing this arrearage. **The monthly payment on this note and the note below is $2,769.04.**

3.13  <u>Class 13.</u>          The Citizens Bank ("Citizens")                    Secured <u>Impaired</u>

 The Debtor listed Citizens as a Pre-petition secured creditor for $34,581.  The debt is secured by the Debtors 2014 Chevy Corvette with a value of $40,698.  The Debtor intends to remain current on this obligation until she can sell her interest in this car and repay this obligation.  The Debtor will cure this payment as can be agreed between Citizens and the Debtor or according to the terms set out in Class 12 above.  The Debtor anticipates selling this car after the confirmation of her Plan. The monthly payment and the cure of the arrearage on this note are included in the above payment for Class 12.

3.14  <u>Class 14.</u>          <u>JP Morgan Chase Bank, National Association ("JP")</u>

  <u>Secured Unimpaired</u>

JP asserts a Pre-petition Secured Claim (POC 23) against the Debtor for $42,943.45.  This debt is secured against the Debtor's residence located at 4277 Joyners Swamp Rd, Gallivants Ferry, SC.

Debtor will continue to make the regular contract payments on this note. Debtor asserts that she has cured any defaults to JP and will remain current on the underlying obligation. This is the Debtor's primary residence, and she does not propose to modify this claim.  The

Debtor asserts that the value of this property exceeds JP's debt. **The monthly payment on this note is $2,726.61.**

3.15   Class 15.          Anderson Brothers Bank ("ABB")          Secured Unimpaired

ABB asserts a Pre-petition secured claim (POC 26) against the Debtor of approximately $39,289.39.  This debt is secured by an asserted lien against the Debtor's 1965 Pontiac GTO, a 2009 Harley Davidson, and a 1939 Studebaker Pickup. The Debtor is not the obligor on this account, but provided her collateral as a part of this loan with Chris Brennick.  Mr. Brennick has failed to make payments under this obligation and the Debtor is making her payments to preserve her collateral.

Debtor will continue to make the regular contract payments on this note until the Debtor sells the collateral.  Debtor is in the process of attempting to sell the collateral to pay off this obligation. Debtor asserts that she has cured any defaults to ABB and will remain current on the underlying obligation.  Debtor asserts that the value of ABB's collateral exceeds its debt. **The monthly payment on this note is $1,200.**

3.16   Class 16.          Horry County Treasurer ("Horry")          Secured Impaired

Horry asserts a Pre-petition Secured Claim against the Debtor of approximately $19,819.52. This debt is secured by an asserted tax lien against 108 acres Duford, Nichols, SC (Horry Co.) (TMS 0130001025); 40.24 acres Joyner Swamp Road, Gallivants Ferry, SC (Horry Co.) (TMS 0550001090); 4270 and 4272 Joyner Swamp Road, Gallivants Ferry, SC (Horry Co.) (TMS 0550001196); 1200 Naylor Ave, Myrtle Beach, SC (Horry Co.) (TMS 1810503014); 2804 N. Ocean Blvd., North Myrtle Beach, SC (Horry Co.) (TMS1450545020).

Debtor will pay these tax obligations in full at the time the property is sold. Any payment to Horry is subject to the Debtor's right to object to these claims.  The Debtor believes that some of the claims asserted by Horry will be reduced by an appeals process or through claims objections.  Additionally, Mr. Cooke will pay the taxes on the property at the time of closing, the last amount available to the Debtor for this property was $14,094.71, which

will be paid from the settlement with Richard Cooke if that settlement is authorized by the Court.

While waiting to sell property, Debtor intends to repay these past-due tax obligations by making regular payments over the next 12 months with 5.25% until they are paid in full. Payments on these tax obligation will begin the first full month after the Plan is confirmed. After Richard Cooke pays the taxes on 2804 N Ocean Blvd the payments will be $479.17 per month.  The Debtor will pay off the balance of these taxes, if any, upon the sale of the land on which the taxes accrued and potentially in part through the resolution with Richard Cooke. Debtor asserts that the value of the property that Horry has under lien exceeds Horry's Claims.

3.17   <u>Class 17.</u>        <u>Citizens Bank N.A.</u>                    <u>Secured Unimpaired</u>
Citizens Bank N.A. asserts a Pre-petition Secured Claim (POC 10) against the Debtor of approximately $6,708.59.  This debt is secured by a lien against the 2013 GMC Denali.

Debtor will continue to make the regular contract payments on this note until the Debtor sells the collateral or the note is paid in full through the term of the obligation or through other means.  This is the vehicle that is used by the Debtor's step-father who holds a ½ interest.  The Debtor intends to sell this property when her step-father no longer requires this transportation. Debtor asserts that she has cured any defaults to Citizens Bank N.A.  and will remain current on the underlying obligation.  Debtor asserts that the collateral's value exceeds the Claim of Citizens Bank N.A.  **The monthly payment on this note is $783.**

3.18   <u>Class 18.</u>        <u>Ally Bank</u>                          <u>Secured Unimpaired</u>
Ally Bank has filed a Pre-petition Secured Claim (POC 9) against the Debtor for $5,706.96 and asserts that it is secured against the Debtor's 2013 GMC Sierra 1500. The Debtor will continue to make payments to Ally Bank until the loan is paid off or the collateral is sold. This is the Debtor's primary vehicle, and she intends to retain it.  Debtor asserts that she has cured any defaults to Ally and will remain current on the underlying obligation.

Debtor asserts that the value of Ally's collateral exceeds its Claim. **The monthly payment on this note is $630.23.**

3.19   Class 19.        Florence County Treasurer ("Florence")        Secured Impaired

Florence holds three secured claims against property located in the county. Those claims were filed as POCs 2, 3, and 4, which total $22,851.93[5]. The Debtor has appealed Florence's assessment and has received three tax bills that have a reduced total of $7,388.95. Debtor believes that Florence County's Claims will be reduced based on reduced tax bills, either through an objection to Claims or an amended claim from Florence. Debtor will make regular payments on this obligation paying this debt in full in 12 months at 5.25% or when the Debtor is able to sell property on which the taxable liability accrued. Payments on these tax obligations will begin the first full month after the Plan is confirmed. Those payments are estimated to be $655.61 per month.

Debtor asserts that the value of the property under lien to Florence exceeds its Claims.

3.20   Class 20.        Clarendon County Treasurer        Secured Impaired

Clarendon County has a secured claim in the amount of approximately $7,162.23 for unpaid 2016 taxes. The taxes are secured against the property located at 1641 Quail Trail, which the Debtor holds in trust for her daughters. The Debtor will pay these tax payments directly, but her children will provide the payment to the Debtor to do so. Both the 2016 and 2017 taxes will be paid according to the terms of taxes, or no later than the Effective Date of the Plan. The 2017 taxes appear to be due in the amount of $6,753. 22.

3.21   Class 21.        Administrative Claims        Non-Voting

This class consists of the estate professionals including Debtors' counsel, any CPAs, accountants, realtors, and special counsel. This class also consists of the quarterly fees of the United States Trustee, which shall continue to be paid as they become due until the case is closed, dismissed, or converted. Debtor anticipates that the US Trustee's Claim will be

---

[5] Shortly before filing the Disclosure Statement Florence County filed three claims which appear to match the reduced amount listed above. Those claims were filed in the Double J case.

limited, as the Debtor has been paying these fees as they come due in the ordinary course. There may be a quarterly payment due at the time this Plan is confirmed, and that Claim will be paid in the ordinary course.

The Debtor currently lacks sufficient liquid assets to pay the members of this class of claims, but they will be paid according to the order of priority outlined in the Code upon the sale of an unencumbered asset or an asset with equity beyond any liens against such property.  The Claims of any estate professionals will be paid only after approval of those fees. Debtor estimates that the current outstanding administrative Claims are approximately $55,000 for Debtor's counsel and an additional $15,000 for the Debtor's accountants.  Fee applications for the majority of these balances have not yet been filed at the time the Disclosure Statement was filed.  Counsel for the Debtor has agreed to waive the requirement that it be paid by the effective date of the Plan.

The Deadline for filing any 11 U.S.C. § 503(b)(9) claims has passed.  Any professionals of the estate or other administrative creditors must file their fee applications or claims no later than 30 days after the effective date of this Plan.  The U.S. Trustee is exempt from this requirement for any quarterly fees the Debtor may owe to the office of the U.S. Trustee.

3.22  Class 22.         Priority Claims                    Non-Voting

Debtor believes that the only potential Priority Claims that may exist are those of the taxing authorities, including the IRS, the State Department of Revenue, and the various municipal property taxing authorities (Horry County, Marion County, Clarendon, Sevierville County, and Florence County).  These priority claims are primarily for any unpaid unsecured ad valorem property taxes.  Any pre-petition ad valorem property taxes will be paid in full over a period of 12 months with 5.25% interest after the Debtor has reviewed and addressed those claims through the claims objection process.  Payments on the pre-petition ad valorem property tax obligations will begin the first full month after the Plan is confirmed. Any post-petition ad valorem tax obligations for property of the Debtor will be paid in the ordinary course.

The Debtor does not believe that she will have any obligations to the IRS for 2014 or to the SC Department of Revenue based on her filed tax return. Debtor appears to owe $46 to the IRS for her 2015 taxes and will pay that upon approval of the Plan. The Debtor's 2016 taxes are under extension, and her accounting professionals were still completing those documents at the time this Plan was filed. Debtor anticipates having the 2016 tax returns prepared and filed before confirmation. The filing of the 2016 return was under extension through October. The return for 2015 was not filed until the beginning of October and the CPA has been waiting on documents to complete the 2016 tax return.

3.23   <u>Class 23.</u>          <u>General Unsecured Creditors</u>                    <u>Unsecured Impaired</u>
This class consists of all general unsecured creditors of the Debtor, including any contract rejection Claims and any remaining deficiency Claims of undersecured creditors.   In addition to the Claims scheduled for and/or filed by general unsecured creditors, this class includes any and all of the Debtor's remaining unsecured deficiency obligations to CNB.

The Debtor estimates that all creditors will be paid in full from the sale of her assets. This does not mean that all creditors will receive the amount listed on the Debtor's Schedules or the amount included in the Claims filed by the creditors.  Debtor intends to file a series of objections to clean up the estate's Claims list.  Some Claims are duplicative, some are incorrectly categorized, and some are materially incorrect.  Debtor asserts that upon the completion of this Claims objection period, creditors in this class will be paid 100% of their agreed upon Claim.  After a review of the schedules and the filed Proofs of Claim in this matter, and after taking into account the liquidation of all estate and non-estate property held as collateral by secured creditors, the Debtor estimates that the aggregate amount of known Unsecured Claims will be between $50,000 to $150,000 after claims objections have completed.

This estimation of a 100% Plan is subject to several assumptions.  First, the Debtor is assuming that the litigation among creditors will not generate sufficient administrative Claims such that there will be insufficient assets to pay this class in full.  It is further assumed that the Debtor's valuation of her property is correct.  While she believes her

estimates to be conservative, and there is a sufficient equity cushion in those estimates to pay all Claims in full should the values be lower, Debtor cannot anticipate market conditions in the future, so there is a market risk that the estimate of the property value could be further reduced by a macro or microeconomic change.

Creditors in this class will only be paid once the creditors in class 20 and 21 are paid in full. Debtor is also reserving the right to retain a surplus fund in trust to address any unanticipated undersecured Claims that may exist.

Debtor will pay the unsecured creditors in this class in full, with interest to accrue at the rate of 5.25% per annum.  Once the Debtor establishes an allowed Claim, the creditors will be paid interest on their obligation at the above rate since the Petition Date.  Interest will accrue on all allowed claims as of the date of filing and will accrue until the class 22 creditor is paid.

3.24  <u>Class 24.</u>        <u>Richard Cooke ("Mr. Cooke")</u>        Unsecured <u>Impaired</u>  <u>Disputed</u>

The Debtor listed Richard Cooke on Schedule F in an unknown amount and as a disputed Claim.  The Debtor believed that Mr. Cooke might make a Claim against her for various payments he made to her as rent or as repayment of funds loaned to him by the Debtor.  Mr. Cooke filed a Claim for $1,000,000.  $2,850 of the Claim is Priority Claim, and the remainder is an Unsecured Claim.  Mr. Cooke has now filed an adversary against the Debtor asserting claims similar to his Proof of Claim.  The Debtor disputes this Claim and will be addressing this Claim through the Claims objection process and this adversary.

The Debtor and Mr. Cooke have entered into a settlement agreement to resolve this disputed claim.  The details of this agreement will be available through the yet to be filed Fed. R. Bankr. P. 9019 settlement.  This summary should not be considered to override the terms of the settlement and is merely to inform creditors how this settlement works as part of the Plan.  The general terms of the agreement that in exchange for the transfer of the 2804 N. Ocean Blvd property to Mr. Cooke the Debtor will receive: a mutual release, payment of $175,000, the payment of the obligation owed to First Reliance Bank in Class 2 in the

amount of $391,656, the payment of the Conway National Bank Claims in Classes 9 and 10 of $30,543, and a partial payment of the Horry County Taxes in class 16 in the amount of approximately $14,094.   The payments to Class 2, 9, and 10 are fixed and if those obligations are overpaid the refunds will go to the estate.  The parties will agree to mutually release each other.   The settlement is conditioned on court approval and Mr. Cooke receiving the financing for the roughly $611,300.  Should that settlement fail, the Debtor will likely have to litigate these issues, as she disputes Mr. Cooke's position.

In the event the Court determines that Mr. Cooke has a valid claim against the Debtor, those Claims will be properly classified and treated under this plan, likely as an unsecured creditor in Class 23 above.

3.25  <u>Class 25.</u>        <u>Equity</u>

This class consists of Connie Lynette Hardwick, the Debtor.  The Debtor believes that this will be a 100% plan with additional assets left over for equity upon completion of the Plan. Because the amount of funds available is dependent on the Claims process, the sales prices realized, and taxes on those sales, it is impossible to determine how much this class will receive.  The Absolute Priority Rule set out in 11 U.S.C. § 1129(b)(2)(B)(ii), in summary, holds that a dissenting class of voting creditors must be paid in full before a debtor can receive or retain any property under a reorganization plan.   The Debtor here proposes to repay her creditors in full which would allow the Debtor to retain her some of her assets, upon completing her proposed Plan. See generally *In re Maharaj*, 681 F.3d 558 (4th Cir. 2012) and 11 U.S.C. § 1129(b)(2)(B)(ii).

# 4   <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

4.01  <u>Allowance of Claims</u> - Except as expressly provided herein, or any order entered in this Chapter 11 Case prior to the Effective Date (including the Order Confirming Plan), no Claim shall be deemed allowed, unless and until such Claim is deemed allowed under the Code, is agreed to be allowed by the Debtor, or is ordered allowed by final order of the Court. Except as expressly provided in this Plan, the Debtor, after Confirmation, will have and retain any

and all rights and defenses the pre-petition and pre-confirmation Debtor had concerning any Claims, including, but not limited to, any causes of action or defenses thereto.  The Debtor also retains the right to file any necessary motions or other pleadings for estimation or determination of the amount of any disputed Claim. All Claims of any person or entity that owes money to the Debtor shall be disallowed unless and until such person or entity pays the full amount it owes the Debtor.

The Debtor estimates that the sale of her property will occur within 12 months of October 4, 2017.  The Debtor is marketing these properties and regularly evaluates the market conditions for each property to determine if pricing needs to be adjusted.  Debtor will not distribute payments to the unsecured creditors until the following events have occurred:

1. This Plan is approved by the Bankruptcy Court, and such order is a final order;

2. The Claims Bar Date referenced in Section 4.04 below has passed;

3. All claims objections have been resolved;

4. Debtor's counsel has received the payment from the disbursing agent, and such payment is considered to be 'good funds' as required under the South Carolina Rules of Professional Ethics number 412. This period is dependent on the manner of payment and Debtors' counsel's judgment of when such funds are 'good funds.'

5. The Debtor has concluded the adversary litigation against Richard Cooke, adversary case no 17-80091-jw.

Once these five criteria are met Debtors' counsel will distribute the funds according to the terms proposed herein, within 30 days.

*4.02* Claims Bar Date **-** Unless otherwise ordered by the Court, the Claims Bar Date shall be July 20, 2017, for all creditors except governmental units and shall be September 4, 2017, ("Claims Bar Date") for a governmental unit as such dates were set forth in the Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines issued on the Filing Date in this case.  Unless specifically ordered otherwise by the Court, only Claims scheduled by the Debtor without any contingent, unliquidated, or disputed notations, and those Claims filed by proof of claims on or before the Claims Bar Date, shall constitute Claims asserted against the Debtor in this Case.  Any Claims filed after the Claims Bar Date

shall be automatically disallowed unless the claimant successfully obtains an order of the Court or consent of the Debtor allowing a late-filed proof of claim.

4.03 <u>Authority to Prosecute Objections</u> - The Debtor specifically reserves the right to object to any Claim the Debtor disputes, whether such Claim resulted from the Debtor's schedules or from a filed proof of claim. After the Effective Date, only the Debtor and bankruptcy counsel shall have the authority to file objections to Claims and to settle, to compromise, withdraw, or to litigate to judgment objections to Claims.

4.04 <u>Claims Objection Bar Date</u> - Except as otherwise ordered by the Court, any and all objections to Claims shall be filed with the Court and served upon the relevant creditors by the date that is 60 days after the Effective Date or 60 days after such Claim or any amendment thereto is filed, whichever date is later (the "Claims Objection Bar Date"). The Bankruptcy Court upon motion of the Debtor may extend this Claims Objection Bar Date. Any distributions called for in the Plan concerning and on account of Claims to which objections have been filed will be made as soon as practicable, and only after such Claim becomes an allowed Claim.

*4.05* <u>Status of Claims After Confirmation</u> - From and after Confirmation of this Plan, the Debtor is exonerated from any and all pre-petition Claims that were not filed by a creditor or claimant of interest against the Debtor before the Claims Bar Date set by this Court or otherwise scheduled by the Debtor without qualification. The Debtor will, from and after Confirmation of this Plan, be indebted for, and obligated to pay, only those liabilities and obligations set forth in Article III of this Plan, and only those that are allowed Claims. To avoid any confusion, a Claim will not be allowed unless the Debtor has determined that there is no objection required for that Claim or the Claims Objection Bar Date has passed.

## 5 *PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES*

5.01 The Debtor has one executory contract which is an on-demand contract for rental services on her two mountain houses. The Debtor is not rejecting this contract as it is terminable at any time and it is current. Debtor is essentially allowing this lease to "ride through" her bankruptcy.

## 6   _MEANS FOR IMPLEMENTATION OF THE PLAN_

6.01   <u>Feasibility</u> - 11 U.S.C. §1129(a)(11) provides that in order for a Plan of reorganization to be
confirmed, it must be demonstrated that the Plan of reorganization is not likely to be followed
by a liquidation or the need for further reorganization of the Debtor or any successor of the
Debtor under the Plan, unless the liquidation or reorganization is proposed in the Plan of
reorganization. The Debtor is attempting to selling a significant portion of her assets to pay
her creditors.  Effectively this is a liquidating Chapter 11 Plan. The net sales proceeds from
these sales will be distributed to creditors according to this Plan of reorganization. The
Debtor asserts that the Plan is feasible because the Debtor can stay current on her secured
obligations and will be able to liquidate her assets to repay her creditors in full.

6.02   <u>Taxes</u> - The Debtor believes there are no adverse tax consequences to the Debtor or its
creditors as a result of the bankruptcy and the provisions of the Plan, but all creditors and
parties in interest should consult their respective accountants and/or tax attorneys.   The
Debtor will have to pay taxes that result from any profits she may receive from the sales of
her properties.  The Debtor is working to determine her basis in her property so that she can
calculate the taxes that she will have to pay for any sale of property.  The Debtor will not be
able to calculate the precise tax burden until she sells a property and receives the final sale
price.

The Debtor has filed her currently due tax returns for 2014 and 2015. Debtor owes $46 for
2015, and that amount will be paid after confirmation of this Plan.  The Debtor has not filed
her 2016 tax returns due to various delays in preparing her 2015 tax returns.  The Debtor
will have her 2016 taxes filed before the confirmation hearing in this case.

The Debtor has consulted with her CPA and they intend to have a supplement to disclose
her 2016 tax liability, her basis in her properties, and her estimated tax liability from the sale
of her assets that will be noticed to the creditors and parties in interest no later than 14 days
prior to the voting deadline set by the Court for the Plan.

6.03   <u>Overview</u> -The success of the Plan, and any significant recovery to the creditors of the estate
is dependent upon the successful marketing and consummation of sales of the Debtor's assets.

The Debtor has been marketing a significant portion of her assets and has received three offers. The Debtor intends to list additional property, both real and personal, to further expedite the sale of assets and payment to creditors. Debtor is also pursuing price reductions to more quickly liquidate her properties.

6.04  Conditions Precedent to Confirmation - The Bankruptcy Court shall have signed, and the Clerk of the Bankruptcy Court shall have entered, an order granting approval of the Disclosure Statement and finding that it contains adequate information under section 1125 of the Bankruptcy Code, and such order shall have become a Final Order. The Confirmation order shall have been signed by the Bankruptcy Court and entered by the Clerk of the Bankruptcy Court.

6.05   Implementation on the Effective Date – This Plan shall not become effective and operative unless and until the Effective Date of Confirmation occurs. The Effective Date of Confirmation shall be the thirtieth (30th) day after the Order Confirming the Plan is entered by the Court. Payments and distributions under this Plan, unless otherwise set forth herein, shall commence on the substantial consummation date, so long as all conditions in section 4.01 have been met.

7   *GENERAL PROVISIONS*

7.01  Cram Down of Impaired Creditors Not Accepting Plan - Any class of creditors that is impaired, but not accepting the Plan by the requisite majority in number and two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of Claims or interest that is impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.

7.02  Status of Case After Confirmation - Upon Substantial Consummation of this Plan, or after all conditions in paragraph 4.01 above are met, the Debtor will move to close this bankruptcy case, requesting that the Court retain jurisdiction relating to various matters contained in the Plan, including future asset sales. Upon the completion of payments called for under this Plan, the Debtor will move to re-open the case to request that the Court grant the Debtor a

discharge under 11 U.S.C. §1141(a)(5). Upon Confirmation of this Plan, the Debtor is exonerated from any and all Claims not filed by a creditor or claimant of interest against the Debtor before the Claims Bar Date previously set by this Court. The Debtor will, from and after Confirmation of this Plan, be indebted for, and obligated to pay the Claims, liabilities, and obligations set forth in Article III of this Plan, as such obligations may be allowed or modified under this Plan or through Claims objections and/or motions to value. Except as otherwise allowed by the Code, upon Confirmation and the continuing timely payments called for by the Plan, creditors are stayed from bringing actions against the Debtor to collect debts in a manner inconsistent with the terms of this Plan.

The Debtor intends to, and retains the right as the trustee of the estate to address preferences, litigate, address and object to Claims, and attend to any other matters necessary to fully administer this estate.  For the avoidance of doubt, the Debtor is reserving her rights under 11 U.S.C. § 1123(b)(3)

The Debtor will continue to file monthly operating reports, as required, until this case is closed.

7.03  Absolute Priority Rule - The Absolute Priority Rule set out under 11 U.S.C. § 1129(b)(2)(B)(ii) essentially says that a dissenting class of voting creditors must be paid in full before a debtor can receive or retain any property under a reorganization plan.  The Debtor here proposes to repay her creditors in full which would allow the Debtor to retain her some of her assets, upon completing her proposed Plan. See generally In re Maharaj, 681 F.3d 558 (4th Cir. 2012).

7.04  The Debtor reserves the right to modify this Plan at any time before Confirmation or after Confirmation pursuant to 11 U.S.C. § 1127.

## 8   *DISCHARGE*

8.01  The entry of an Order Confirming Plan does not by itself act as a discharge of the Debtor's liabilities. Because the Debtor is an individual, the Debtor shall not receive a discharge until

all payments called for under the Plan have been made pursuant to 11 U.S.C. §1141(a)(5). The Debtor may elect to administratively close this case to reduce the Debtor's reporting requirements and the administrative expenses to the US Trustee.

8.02 Upon the Debtor's obtaining a Discharge after the payments called for herein, any defaults whatsoever with respect to any indebtedness or obligations of the Debtor existing prior to Confirmation shall be deemed to have been waived and shall not thereafter be a basis for the exercise by any person of any right or remedy whatsoever, as a creditor or claimant against the Debtor.

**9   JURISDICTION**

9.01 <u>Retention of Jurisdiction.</u> The Court shall retain jurisdiction over the Debtor, its property, and all other parties appearing in the reorganization proceeding as provided by this Plan or by Order of the Court. The Court shall retain jurisdiction as provided in the Bankruptcy Code until the entry of the final decree closing the bankruptcy case. To the extent that it may be necessary, Debtor may request that the Court enter a final order closing the case but retaining jurisdiction for a limited purpose, including, but not limited to, presiding over any adversary proceeding or Claim objection that may be pending at the time of the closing of the main bankruptcy case or over future asset sales as contemplated in this Plan.

9.02 <u>Prosecution and Defense of Claims</u>. The Debtor shall retain full power after the Substantial Consummation to prosecute and defend any causes of action or proceedings existing at Substantial Consummation by or against it, or resulting from the administration of the estate of the Debtor or resulting from any other Claim by or against the debtor or its assets, or arising prior to or existing before Substantial Consummation.

9.03 <u>Post-Confirmation Acts</u> -  The Debtor, and its agents, shall perform all acts necessary to complete and consummate this Plan, to include:

   1. Prosecution of all Claims against third parties by the Debtor and objections to Claims filed by third parties;

      i.  Execution and filing of all legal documents required; and

      ii. Performing any and all functions required by the Code and this Plan.

2.  The Debtor, or her attorney, will serve as the Disbursing Agent for payment of all allowed Claims.

3.  Final Report. The Debtor shall cause to be filed with the Court an itemized list of all receipts of and disbursements by the Debtor after Confirmation. Such report must be approved by the Court before the final decree is issued discharging the Debtor in this reorganization proceeding. This is an individual Chapter 11 case, and as such, the final report will not be filed with the Court until the Debtor has either paid her five years of disposable income into the Plan or, as provided for herein, pays her creditors in full. Debtor will file a final report within 30 days of paying her creditors according to this Plan.

Connie Lynette Hardwick

  /s/ Connie Lynette Hardwick
Connie Lynette Hardwick

Double J Farms, LLC

  /s/ Connie Lynette Hardwick
By: Connie Lynette Hardwick
Its: Manager

/s/ Sean Markham
Sean Markham, I.D. # 10145
Attorney for the Debtors
P.O. Box 20074
Charleston, SC 29413-0074
Tel: 843-284-3646
Fax: 843-637-7499
sean@markhamlawsc.com

# EXHIBIT A

# PROJECTED BUDGET

| | | | 3/28/17-4/30/17 | May-17 | 17-Jun | 17-Jul | 17-Aug | 17-Sep | 17-Oct | 17-Nov | Dec-17 | Jan-18 | Feb-18 | Mar-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | | | $ 43,643.31 | $ 4,405.83 | $ 1,118.31 | $ 18,447.98 | $ 889.83 | $ 5,897.53 | $ 413.51 | $ 2,311.28 | $ 704.67 | $ 25,435.23 | $ 7,864.28 | $ 77,665.41 |
| **Income** | | | | | | | | | | | | | | |
| Rent | Rent Maple Ridge | $ 1,005.68 | $ 4,305.95 | $ 2,562.74 | $ 1,192.55 | $ - | $ 4,163.04 | $ 1,997.94 | $ 3,630.65 | $ 3,009.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| | Naylor Payment from Tenant | | | | | | | | | $ 504.00 | | | |
| | HUD Rent Naylor | $ 632.00 | $ 632.00 | $ 632.00 | $ 632.00 | $ 632.00 | $ 632.00 | $ 632.00 | $ 646.00 | $ 646.00 | $ 646.00 | $ 646.00 | $ 646.00 |
| **Total Rent** | | $ 1,637.68 | $ 4,937.95 | $ 3,194.74 | $ 1,824.55 | $ 632.00 | $ 4,795.04 | $ 2,629.94 | $ 4,276.65 | $ 4,159.00 | $ 3,646.00 | $ 3,646.00 | $ 3,646.00 |
| Disability/Pension Payments | NYL Pension | $ 854.68 | $ 827.89 | $ 856.90 | $ 860.55 | $ 827.89 | $ 864.47 | $ 855.64 | $ 858.38 | $ 858.38 | $ 851.64 | $ 851.64 | $ 851.64 |
| | Soc. Sec. | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 |
| | Reliance Standard | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 |
| | NY Life Disability | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 3,000.00 | $ 4,100.00 | $ 3,900.00 | $ 5,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 |
| | Investors Life | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 |
| **Total Disability/Pension** | | $ 11,543.68 | $ 11,516.89 | $ 11,545.90 | $ 11,549.55 | $ 11,516.89 | $ 10,553.47 | $ 11,644.64 | $ 11,447.38 | $ 12,547.38 | $ 11,540.64 | $ 11,540.64 | $ 11,540.64 |
| Other income | Residual Income BCBS | $ 267.92 | $ 378.29 | $ 353.15 | $ 436.78 | $ 353.15 | $ 328.92 | $ 377.38 | $ 353.15 | $ 356.09 | $ 356.09 | $ 356.09 | $ 356.09 |
| | Residual income Unum | $ 1,286.06 | $ 349.42 | $ 760.99 | $ 827.01 | $ 248.40 | $ 251.81 | $ 720.08 | $ 1,160.26 | $ 700.50 | $ 700.50 | $ 700.50 | $ 700.50 |
| | X-fer to dip | $ 2,983.67 | $ 500.00 | | | | | | | | | | |
| | River Neck Acres Income | $ 1,000.00 | | $ 200.00 | $ 1,025.00 | $ 1,600.00 | $ 9,150.00 | $ 9,900.00 | $ 1,075.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 |
| | X-fer close Double J | | | | $ 77.48 | | | | | | | | |
| **Total Other** | | $ 5,537.65 | $ 1,227.71 | $ 1,314.14 | $ 2,366.27 | $ 2,201.55 | $ 9,730.73 | $ 10,997.46 | $ 2,588.41 | $ 6,556.60 | $ 6,556.60 | $ 6,556.60 | $ 6,556.60 |
| Sale Income | Sale of 118 Acres Gresham | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | Richard Cooke Settlement | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 135,000.00 | $ - |
| | Repayment From Daughters | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 25,000.00 | $ - | | |
| **Total Sales** | | 0 $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 25,000.00 | $ - | $ 135,000.00 | $ - |
| Non-recurring Payments | USDA | $ - | $ - | $ - | $ - | $ - | $ - | $ 898.00 | | | | | |
| | Targe Refund | $ 779.15 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | Safe Co Boat refund | $ - | $ - | $ 11,935.11 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | Farm Bureau Claim | $ 53,810.67 | $ - | | $ - | $ - | $ - | $ 13,925.86 | $ - | $ - | $ - | $ - | $ - |
| | Pure Insurance Payment | $ - | $ - | $ 15,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | bank reimbursment | $ 30.00 | $ - | | $ - | $ - | $ 70.00 | | $ 35.00 | $ - | $ - | $ - | $ - |
| | city of Nmb | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 6.03 | $ - | $ - | $ - | |
| | NYL Refund | $ - | $ 3,935.78 | | $ 65,399.37 | $ 7,403.40 | $ 14,340.00 | $ - | $ - | $ - | $ - | $ - | $ - |
| | refund | $ 77.78 | $ - | | $ - | $ - | $ - | $ - | $ 134.89 | $ - | $ - | $ - | $ - |
| | Sevier Co. Gen session court | $ 20.00 | $ 450.00 | $ 500.00 | $ - | $ 550.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | card cash | $ - | $ 4.96 | | $ - | $ 13.30 | $ - | $ - | $ 12.83 | $ - | $ - | $ - | $ - |
| | bank interest | $ 0.93 | $ 0.49 | $ 0.22 | $ 0.15 | $ 0.15 | $ 0.09 | $ 0.07 | $ 0.07 | $ - | $ - | $ - | $ - |
| | Kids | $ 3,150.00 | $ 500.00 | $ - | $ - | $ - | $ - | $ - | $ 1,466.20 | $ - | $ - | $ - | $ - |
| **Total Non-Recurring** | | $ 57,868.53 | $ 4,891.23 | $ 27,435.33 | $ 65,399.52 | $ 7,966.85 | $ 14,410.09 | $ 0.07 | $ 16,337.96 | $ 140.92 | $ - | $ - | $ - |
| | **Total Income** | $ 76,587.54 | $ 22,573.78 | $ 43,490.11 | $ 81,139.89 | $ 22,317.29 | $ 39,489.33 | $ 25,272.11 | $ 34,650.40 | $ 23,403.90 | $ 46,743.24 | $ 21,743.24 | $ 156,743.24 | $ 21,743.24 |
| | | | | | $ 79,739.37 | | | | | | | | |

**Expenses**

| Property | | May-17 | 17-Jun | 17-Jul | 17-Aug | 17-Sep | 17-Oct | 17-Nov | Dec-17 | Jan-18 | Feb-18 | Mar-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2804 N Ocean Blvd | Mtg First Reliance | $ - | $ 6,100.00 | $ 922.50 | $ 16,450.00 | $ 4,677.14 | $ 6,500.00 | $ 5,834.38 | $ 5,653.60 | $ - | $ - | $ - | $ - |
| | santee cooper | $ - | $ - | $ 128.42 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | City of NMB | $ - | $ 125.66 | $ 46.35 | $ - | $ 132.01 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | Pheonix enviromental | $ - | $ 2,170.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total 2804 N Ocean** | | $ - | $ 6,354.08 | $ 3,138.85 | $ 16,450.00 | $ 4,809.15 | $ 6,500.00 | $ 5,834.38 | $ 5,653.60 | $ - | $ - | $ - | $ - |
| Tennsee Rentals | Nancy Pickelsimer | $ - | $ 1,230.00 | $ 1,210.92 | $ 1,210.92 | $ 1,210.92 | $ 1,210.92 | $ - | $ 1,210.92 | $ 2,421.84 | $ 1,210.92 | $ 1,210.92 | $ 1,210.92 |
| | mountain grass | $ - | $ - | $ 260.00 | $ 390.00 | $ 260.00 | $ 260.00 | $ - | $ 260.00 | $ - | $ - | $ - | $ - |
| | Repair Rental | $ - | $ 240.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | Tenn Taxes | $ - | | | | | | | | | $ 1,393.00 | | |
| **Total Tenn. Rental** | | $ - | $ 1,470.00 | $ 1,470.92 | $ 1,600.92 | $ 1,470.92 | $ 1,470.92 | $ - | $ 1,470.92 | $ 2,421.84 | $ 1,210.92 | $ 2,603.92 | $ 1,210.92 |
| 4277 Joyner | JP Morgan | $ - | $ 2,726.00 | $ 2,726.61 | $ 2,726.61 | $ 2,726.61 | $ 2,726.81 | $ - | $ 5,453.63 | $ 2,726.61 | $ 2,726.61 | $ 2,726.61 | $ 2,726.60 |
| | 2nd Mtg House | $ - | $ 835.13 | $ 835.13 | $ - | $ 865.00 | $ - | $ - | $ - | $ 835.13 | $ 835.13 | $ 835.13 | $ 835.13 |
| | home maint. | $ 2,000.00 | $ 125.00 | $ 548.98 | $ 1,890.59 | $ 39.28 | $ 3,511.12 | $ - | $ 1,025.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 |
| | Home Taxes | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,594.04 | $ - | | |
| **Total Home** | | $ 2,000.00 | $ 3,686.13 | $ 4,110.72 | $ 4,617.20 | $ 3,630.89 | $ 6,237.93 | $ - | $ 6,478.63 | $ 3,711.74 | $ 3,711.74 | $ 5,305.78 | $ 3,711.74 |
| | taxes | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 6,873.02 | $ - | $ - |
| 1100 Acres Florence | repairs | $ - | $ - | $ - | $ - | $ 2,134.16 | $ - | $ - | $ 2,606.54 | $ - | $ - | $ - | $ - |
| | arbor one | $ 15,439.42 | $ 2,169.10 | $ 17,683.84 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Florence** | | $ 15,439.42 | $ 2,169.10 | $ 17,683.84 | $ - | $ 2,134.16 | $ - | $ - | $ 2,606.54 | $ - | $ - | $ 6,873.02 | $ - |
| 1641 Quail Trail | Abb Mortgage | $ 2,151.00 | $ 2,151.00 | $ 2,151.00 | $ - | $ 2,151.00 | $ 2,151.00 | $ - | $ - | $ - | $ - | $ - | $ - |
| | santee grass | $ - | $ - | $ 250.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ - | $ 125.00 | $ 125.00 | $ - | $ - | $ - |

|  |  | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 |
|---|---|---|---|---|---|---|---|
| Beginning Balance |  | $ 26,424.73 | $ 14,657.97 | $ 14,309.36 | $ 13,084.29 | $ 11,780.80 | $ 10,952.81 |
| **Income** |  |  |  |  |  |  |  |
| Rent | Rent Maple Ridge | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
|  | Naylor Payment from Tenant |  |  |  |  |  |  |
|  | HUD Rent Naylor | $ 646.00 | $ 646.00 | $ 646.00 | $ 646.00 | $ 646.00 | $ 646.00 |
| **Total Rent** |  | **$ 3,646.00** | **$ 3,646.00** | **$ 3,646.00** | **$ 3,646.00** | **$ 3,646.00** | **$ 3,646.00** |
| Disability/Pension Payments | NYL Pension | $ 851.64 | $ 851.64 | $ 851.64 | $ 851.64 | $ 851.64 | $ 851.64 |
|  | Soc. Sec. | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 | $ 2,357.00 |
|  | Reliance Standard | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 | $ 3,232.00 |
|  | NY Life Disability | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 |
|  | Investors Life | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 | $ 1,100.00 |
| **Total Disability/Pension** |  | **$ 11,540.64** | **$ 11,540.64** | **$ 11,540.64** | **$ 11,540.64** | **$ 11,540.64** | **$ 11,540.64** |
| Other income | Residual Income BCBS | $ 356.09 | $ 356.09 | $ 356.09 | $ 356.09 | $ 356.09 | $ 356.09 |
|  | Residual income Unum | $ 700.50 | $ 700.50 | $ 700.50 | $ 700.50 | $ 700.50 | $ 700.50 |
|  | X-fer to dip |  |  |  |  |  |  |
|  | River Neck Acres Income | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 |
|  | X-fer close Double J |  |  |  |  |  |  |
| **Total Other** |  | **$ 6,556.60** | **$ 6,556.60** | **$ 6,556.60** | **$ 6,556.60** | **$ 6,556.60** | **$ 6,556.60** |
| Sale Income | Sale of 118 Acres Gresham | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Richard Cooke Settlement | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Repayment From Daughters | $ - | $ - | $ - | $ - | $ - | $ - |
|  |  |  |  |  |  |  |  |
| **Total Sales** | 0 | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
| Non-recurring Payments | USDA | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Targe Refund | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Safe Co Boat refund | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Farm Bureau Claim | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Pure Insurance Payment | $ - | $ - | $ - | $ - | $ - | $ - |
|  | bank reimbustment | $ - | $ - | $ - | $ - | $ - | $ - |
|  | city of NMB | $ - | $ - | $ - | $ - | $ - | $ - |
|  | NYL Refund | $ - | $ - | $ - | $ - | $ - | $ - |
|  | refund | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Sevier Co. Gen session court | $ - | $ - | $ - | $ - | $ - | $ - |
|  | card cash | $ - | $ - | $ - | $ - | $ - | $ - |
|  | bank interest | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Kids | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Non-Recurring** |  | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
|  | **Total Income** | **$ 21,743.24** | **$ 21,743.24** | **$ 21,743.24** | **$ 21,743.24** | **$ 21,743.24** | **$ 21,743.24** |

**Expenses**

| Property |  | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 |
|---|---|---|---|---|---|---|---|
| 2804 N Ocean Blvd | Mtg First Reliance | $ - | $ - | $ - | $ - | $ - | $ - |
|  | santee cooper | $ - | $ - | $ - | $ - | $ - | $ - |
|  | City of NMB | $ - | $ - | $ - | $ - | $ - | $ - |
|  | Pheonix enviromental | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total 2804 N Ocean** |  | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
| **Tennseee Rentals** | Nancy Pickelsimer | $ 1,210.92 | $ 1,210.92 | $ 1,210.92 | $ 1,210.92 | $ 1,210.92 | $ 1,210.92 |
|  | mountain grass | $ 260.00 | $ 260.00 | $ 260.00 | $ 260.00 | $ 260.00 | $ 260.00 |
|  | Repair Rental | $ - | $ - | $ - |  | $ - | $ - |
|  | Tenn Taxes |  |  |  |  |  |  |
| **Total Tenn. Rental** |  | **$ 1,470.92** | **$ 1,470.92** | **$ 1,470.92** | **$ 1,470.92** | **$ 1,470.92** | **$ 1,470.92** |
| 4277 Joyner | JP Morgan | $ 2,726.61 | $ 2,726.61 | $ 2,726.61 | $ 2,726.61 | $ 2,726.61 | $ 2,726.61 |
|  | 2nd Mtg House | $ 835.13 | $ 835.13 | $ 835.13 | $ 835.13 | $ 835.13 | $ 835.13 |
|  | home maint. | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 |
|  | Home Taxes | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Home** |  | **$ 3,711.74** | **$ 3,711.74** | **$ 3,711.74** | **$ 3,711.74** | **$ 3,711.74** | **$ 3,711.74** |
| 1100 Acres Florence | taxes | $ - | $ - | $ - | $ - | $ - | $ - |
|  | repairs | $ - | $ - | $ - | $ - | $ - | $ - |
|  | arbor one | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Florence** |  | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
| 1641 Quail Trail | Abb Mortgage | $ - | $ - | $ - | $ - | $ - | $ - |
|  | santee grass | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 |

| | | 3/28/17-4/30/17 | May-17 | 17-Jun | 17-Jul | 17-Aug | 17-Sep | 17-Oct | 17-Nov | Dec-17 | Jan-18 | Feb-18 | Mar-18 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Taxes | | | | | | | | | | | | | |
| **Total Quail** | | $ 2,151.00 | $ - | $ 2,401.00 | $ 2,276.00 | $ 125.00 | $ 2,276.00 | $ 2,151.00 | $ 125.00 | $ 125.00 | $ - | $ - | $ - | |
| 34th Ave | Grass | $ - | $ - | $ 70.00 | $ - | $ 140.00 | $ 70.00 | $ 70.00 | $ 70.00 | $ - | $ - | $ - | $ - | |
| | CITY OF NMB | $ - | $ - | $ 46.35 | $ 117.42 | $ 127.38 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | Taxes | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 3,324.89 | $ - | $ - | |
| **Total 34th** | | $ - | $ - | $ 116.35 | $ 117.42 | $ 267.38 | $ 70.00 | $ 70.00 | $ 70.00 | $ - | $ - | $ - | $ - | |
| 1200 Naylor | Repairs | $ - | $ - | $ - | $ 1,411.29 | $ 491.31 | $ 560.52 | $ - | $ - | $ - | $ - | $ - | $ - | |
| | taxes | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,350.77 | $ - | $ - | $ - | |
| **Total Naylor** | | $ - | $ - | $ - | $ 1,411.29 | $ 491.31 | $ 560.52 | $ - | $ - | $ 1,350.77 | $ - | $ - | $ - | |
| Vehicle and Personal Property | Conway National | 7,587.50 | 2,291.63 | 3,719.33 | 3,772.47 | 3,772.47 | 3,772.49 | 3,000.00 | 3,739.03 | 3,693.00 | 991.00 | 991.00 | 991.00 | |
| | ABB | 1,200.00 | - | - | 3,600.00 | - | 858.38 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | |
| | The Citizens Bank | 2,769.04 | - | - | 5,183.43 | - | - | 2,769.04 | - | 2,769.04 | 2,769.04 | 2,769.04 | 2,769.04 | |
| | The Citizens Bank Cure Payments | - | - | - | - | - | - | - | - | - | - | $1,249.68 | $1,249.68 | |
| | Citizens Bank NA | - | 783.00 | - | - | 2,370.00 | 790.00 | - | - | 783.00 | 783.00 | - | - | |
| | ALLY | - | 529.92 | - | - | 1,294.26 | 630.23 | - | - | 1,958.29 | 630.23 | 630.23 | - | |
| **Total Personal Prop** | | $ 11,556.54 | $ 3,604.55 | $ 3,719.33 | $ 12,555.90 | $ 7,436.73 | $ 6,051.10 | $ 6,969.04 | $ 4,939.03 | $ 6,851.29 | $ 6,373.27 | $ 6,373.27 | $ 6,209.72 | |
| Insurance | House insurance | 5,294.65 | - | - | - | 5,294.65 | - | 2,589.87 | - | 1,385.66 | 692.83 | 692.83 | 692.83 | |
| | Farm Insurance | - | - | - | - | - | - | 4,992.88 | - | 2,004.70 | 1,909.24 | 1,909.24 | 1,909.24 | |
| | Other Insurance | 6,138.99 | 387.85 | - | 2,133.07 | 1,452.66 | 1,063.95 | - | 237.70 | - | - | - | - | |
| | NYL | - | 4,518.44 | 472.18 | - | 48.00 | - | 879.99 | - | - | - | - | - | |
| | Medical Insurance | - | - | 382.75 | 382.75 | 382.75 | 382.75 | 382.75 | 382.75 | 382.75 | 382.75 | 382.75 | 382.75 | |
| | Farm Bureau | - | - | 1,813.73 | 2,883.91 | 45.00 | 174.51 | 386.58 | 1,757.96 | 174.51 | 386.58 | 174.51 | 386.58 | |
| **Total Ins.** | | $ 11,433.64 | $ 4,906.29 | $ 2,668.66 | $ 5,399.73 | $ 7,223.06 | $ 1,621.21 | $ 8,352.08 | $ 3,258.40 | $ 3,947.62 | $ 3,371.40 | $ 2,984.82 | $ 3,159.33 | $ 3,371.40 |
| Other Expenses | Utilities | 4,094.74 | 6,639.16 | 3,327.69 | 8,703.50 | 3,720.46 | 3,406.15 | 3,308.89 | 5,587.33 | 4,956.17 | 4,956.17 | 4,956.17 | 4,956.17 | |
| | Auto | - | 65.00 | 2,186.82 | - | 175.58 | 922.08 | - | - | 418.69 | 418.69 | 418.69 | 418.69 | |
| | Papa Joe | - | - | 173.00 | - | - | - | - | - | - | - | - | - | |
| | Kids | 2,650.00 | 500.00 | 3,233.86 | 1,031.28 | 700.00 | - | - | - | - | - | - | - | |
| | Food and Grocery | 1,018.29 | 1,181.64 | 827.01 | 1,303.78 | 1,725.04 | 1,505.87 | 580.96 | - | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | |
| | gas | 174.60 | 198.72 | 268.27 | 468.25 | 352.51 | 74.86 | 214.66 | 328.39 | 350.00 | 350.00 | 350.00 | 350.00 | |
| | Cash | - | 500.00 | - | 200.00 | - | - | - | 204.65 | - | - | - | - | |
| | Temp. Help | 960.00 | 870.00 | - | 2,670.00 | 405.00 | - | - | - | - | - | - | - | |
| | bank fee | 4.00 | 4.00 | 15.66 | 17.66 | - | 70.00 | - | 35.00 | - | - | - | - | |
| | Transfers | - | - | - | 3,000.00 | - | 2,500.00 | - | - | - | - | - | - | |
| | surveyor | - | - | - | - | 500.00 | - | - | - | - | - | - | - | |
| | RNA | - | 2,400.00 | - | - | - | 200.00 | - | 900.00 | - | - | - | - | |
| | recording maps | - | - | - | 30.00 | - | - | - | - | - | - | - | - | |
| | Personal | 397.25 | 29.60 | - | 526.77 | 2,385.11 | - | - | - | - | - | - | - | |
| | odp payment | 232.93 | 243.09 | - | - | - | - | - | - | - | - | - | - | |
| | office and postage | 172.51 | 281.66 | 85.25 | 30.32 | 117.27 | 246.00 | 49.00 | 19.44 | 125.18 | 125.18 | 125.18 | 125.18 | |
| | medical | 549.84 | 184.35 | 989.40 | 928.61 | 280.89 | 513.20 | 415.60 | 100.70 | 495.32 | 495.32 | 495.32 | 495.32 | |
| **Other Expenses** | | $ 10,254.16 | $ 13,097.22 | $ 11,106.96 | $ 18,880.17 | $ 10,391.86 | $ 9,438.16 | $ 4,569.11 | $ 7,175.51 | $ 7,345.35 | $ 7,345.35 | $ 7,345.35 | $ 7,345.35 | |
| Taxes | Taxes | - | - | 36.00 | 737.88 | - | - | - | - | - | 6,454.22 | - | - | |
| | various taxes | - | - | - | - | - | - | - | - | - | 441.03 | - | - | |
| | IRS | - | - | - | - | - | - | - | - | - | - | 46.00 | - | |
| | Cure Payment on Taxes to Horry | - | - | - | - | - | - | - | - | - | - | 479.17 | 479.17 | |
| | Cure Payment on Taxes to Florence | - | - | - | - | - | - | - | - | - | - | 655.61 | 655.61 | |
| | Auto Taxes | - | - | - | - | - | - | - | 607.66 | - | - | 631.27 | - | |
| **Total Taxes** | | $ - | $ - | $ 36.00 | $ 737.88 | $ - | $ - | $ - | $ 607.66 | $ - | $ 6,895.25 | $ 1,812.05 | $ 1,134.78 | |
| | | | May-17 | 17-Jun | 17-Jul | 17-Aug | 17-Sep | 17-Oct | 17-Nov | Dec-17 | Jan-18 | Feb-18 | Mar-18 | |
| | legal fee | 129.00 | - | - | - | - | - | - | - | - | - | - | - | |
| Professional Fees | Debtor's Attorney | - | - | - | - | - | - | - | - | - | 50,000.00 | - | - | |
| | Crowley CPA | - | - | - | - | - | 2,250.00 | - | - | - | 3,000.00 | - | - | |
| | Lindsay CPA | 25.00 | - | - | - | - | - | - | - | - | 9,100.00 | - | - | |
| | Bobby Page appraisal | - | - | - | 1,175.00 | - | - | - | - | - | - | - | - | |
| **Total Professional Fees** | | $ 154.00 | $ - | $ - | $ - | $ - | $ 2,250.00 | $ - | $ - | $ - | $ 62,100.00 | $ - | $ - | |
| SubTotal | | 52,988.76 | 35,287.37 | 46,452.63 | 62,635.22 | 38,900.44 | 34,156.63 | 30,756.13 | 31,777.63 | 25,010.50 | 22,012.68 | 38,339.18 | 86,942.12 | 22,983.92 |
| Quarterly Subtotal | Total calculated US Trustee fee | - | 650.00 | - | 325.00 | - | 975.00 | - | 975.00 | - | - | - | - | - |
| | Unsecured Payment | | | | | | | | | | | | | 50,000.00 |
| **Expense Total** | | 52,988.76 | 35,937.37 | 46,777.63 | 62,635.22 | 39,875.44 | 34,481.63 | 30,756.13 | 32,752.63 | 25,010.50 | 22,012.68 | 39,314.18 | 86,942.12 | 72,983.92 |
| Net Income | | 4,879.77 | (13,363.59) | (3,287.52) | 18,504.67 | (17,558.15) | 5,007.00 | (5,484.02) | 1,897.77 | (1,606.61) | 24,730.55 | (17,570.95) | 69,801.12 | (51,240.68) |
| Ending Balance | | | 4,405.00 | 1,118.31 | 19,622.98 | 889.83 | 5,897.53 | 413.51 | 2,311.28 | 704.67 | 25,435.23 | 7,864.28 | 77,665.41 | 26,424.73 |

| | | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 |
|---|---|---|---|---|---|---|---|
| Total Quail | Taxes | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Quail** | | **$ 125.00** | **$ 125.00** | **$ 125.00** | **$ 125.00** | **$ 125.00** | **$ 125.00** |
| 34th Ave | Grass | $ 70.00 | $ 70.00 | $ 70.00 | $ 70.00 | $ 70.00 | $ 70.00 |
| | CITY OF NMB | $ - | $ - | $ - | $ - | $ - | $ - |
| | Taxes | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total 34th** | | **$ 70.00** | **$ 70.00** | **$ 70.00** | **$ 70.00** | **$ 70.00** | **$ 70.00** |
| 1200 Naylor | Repairs | $ - | $ - | $ - | $ - | $ - | $ - |
| | taxes | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Naylor** | | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
| Vehicle and Personal Property | Conway National | $ 991.00 | $ 991.00 | $ 991.00 | $ 991.00 | $ 991.00 | $ 991.00 |
| | ABB | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 |
| | The Citizens Bank | $ 2,769.04 | $ 2,769.04 | $ 2,769.04 | $ 2,769.04 | $ 2,769.04 | $ 2,769.04 |
| | The Citizens Bank Cure Payments | $1,249.68 | $1,249.68 | $1,249.68 | $1,249.68 | $1,249.68 | $1,249.68 |
| | Citizens Bank NA | $ - | $ - | $ - | $ - | $ - | $ - |
| | ALLY | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Personal Prop** | | **$ 6,209.72** | **$ 6,209.72** | **$ 6,209.72** | **$ 6,209.72** | **$ 6,209.72** | **$ 6,209.72** |
| Insurance | House insurance | $ 692.83 | $ 692.83 | $ 692.83 | $ 692.83 | $ 692.83 | $ 692.83 |
| | Farm Insurance | $ 1,909.24 | $ 1,909.02 | $ 1,909.24 | $ 1,909.24 | $ 1,909.24 | $ 1,909.24 |
| | Other Insurance | $ - | $ - | $ - | $ - | $ - | $ - |
| | NYL | $ - | $ - | $ - | $ - | $ - | $ - |
| | Medical Insurance | $ 382.75 | $ 382.75 | $ 382.75 | $ 382.75 | $ 382.75 | $ 382.75 |
| | Farm Bureau | $ - | $ 174.51 | $ 386.58 | $ - | $ 174.51 | $ 386.58 |
| **Total Ins.** | | **$ 2,984.82** | **$ 3,159.11** | **$ 3,371.40** | **$ 2,984.82** | **$ 3,159.33** | **$ 3,371.40** |
| Other Expenses | Utilities | $ 4,956.17 | $ 4,956.17 | $ 4,956.17 | $ 4,956.17 | $ 4,956.17 | $ 4,956.17 |
| | Auto | $ 418.69 | $ 418.69 | $ 418.69 | $ 418.69 | $ 418.69 | $ 418.69 |
| | Papa Joe | $ - | $ - | $ - | $ - | $ - | $ - |
| | Kids | $ - | $ - | $ - | $ - | $ - | $ - |
| | Food and Grocery | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| | gas | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 |
| | Cash | $ - | $ - | $ - | $ - | $ - | $ - |
| | Temp. Help | $ - | $ - | $ - | $ - | $ - | $ - |
| | bank fee | $ - | $ - | $ - | $ - | $ - | $ - |
| | Transfers | $ - | $ - | $ - | $ - | $ - | $ - |
| | surveyor | $ - | $ - | $ - | $ - | $ - | $ - |
| | RNA | $ - | $ - | $ - | $ - | $ - | $ - |
| | recording maps | $ - | $ - | $ - | $ - | $ - | $ - |
| | Personal | $ - | $ - | $ - | $ - | $ - | $ - |
| | odp payment | $ - | $ - | $ - | $ - | $ - | $ - |
| | office and postage | $ 125.18 | $ 125.18 | $ 125.18 | $ 125.18 | $ 125.18 | $ 125.18 |
| | medical | $ 495.32 | $ 495.32 | $ 495.32 | $ 495.32 | $ 495.32 | $ 495.32 |
| **Other Expenses** | | **$ 7,345.35** | **$ 7,345.35** | **$ 7,345.35** | **$ 7,345.35** | **$ 7,345.35** | **$ 7,345.35** |
| Taxes | Taxes | $ - | $ - | $ - | $ - | $ - | $ - |
| | various taxes | $ - | $ - | $ - | $ - | $ - | $ - |
| | IRS | $ - | $ - | $ - | $ - | $ - | $ - |
| | Cure Payment on Taxes to Horry | $ 4,766.43 | $ - | $ 479.17 | $ 479.17 | $ 479.17 | $ 479.17 |
| | Cure Payment on Taxes to Florence | $ 5,851.01 | $ - | $ - | $ - | $ - | $ - |
| | Auto Taxes | $ - | $ - | $ - | $ 185.00 | $ - | $ - |
| **Total Taxes** | | **$ 10,617.44** | **$ -** | **$ 664.17** | **$ 479.17** | **$ 479.17** | **$ 479.17** |
| | | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 |
| | legal fee | $ - | $ - | $ - | $ - | $ - | $ - |
| Professional Fees | Debtor's Attorney | $ - | $ - | $ - | $ - | $ - | $ - |
| | Crowley CPA | $ - | $ - | $ - | $ - | $ - | $ - |
| | Lindsay CPA | $ - | $ - | $ - | $ - | $ - | $ - |
| | Bobby Page appraisal | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Professional Fees** | | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
| SubTotal | | $ 32,535.00 | $ 22,091.85 | $ 22,968.31 | $ 22,396.73 | $ 22,571.24 | $ 22,783.31 |
| Quarterly Subtotal | | $ 142,461.03 | $ - | $ - | $ 67,456.88 | $ - | $ - |
| | Total calculated US Trustee fee | $ 975.00 | $ - | $ - | $ 650.00 | $ - | $ - |
| | Unsecured Payment | | | | | | |
| | Expense Total | $ 33,510.00 | $ 22,091.85 | $ 22,968.31 | $ 23,046.73 | $ 22,571.24 | $ 22,783.31 |
| | Net Income | $ (11,766.76) | $ (348.61) | $ (1,225.07) | $ (1,303.49) | $ (828.00) | $ (1,040.07) |
| | Ending Balance | $ 14,657.97 | $ 14,309.36 | $ 13,084.29 | $ 11,780.80 | $ 10,952.81 | $ 9,912.74 |

# EXHIBIT B

# LIQUIDATION ANALYSIS

| Liquidation analysis | | | | | | | | Chapter 7 | Chapter 7 |
|---|---|---|---|---|---|---|---|---|---|
| | | | Estimated Amounts in Chapter 11 | | | | | Slow Sale Max return | Quick sale minimum return |
| Non-Exempt Real Property | | | $ 4,220,295.19 | | | | | $ 4,220,295.19 | $ 2,110,147.60 |
| Non-Exempt Personal Property | | | $ 490,305.00 | | | | | $ 490,305.00 | $ 245,152.50 |
| Total Non Exempt Assets | | | $ 4,710,600.19 | | | | | $ 4,710,600.19 | $ 2,355,300.10 |
| | | | | | | | | | |
| Chapter 7 Trustee Fees | | | $ - | | | | | $ 156,876.74 | $ 106,876.92 |
| Chapter 7 Professional Fees | | | $ - | | | | | $ 350,000.00 | $ 75,000.00 |
| Chapter 11 Realtor Fees | | | $ 146,247.49 | | | | | | |
| | | | | | | | | | |
| Classification | Creditor Name | Plan Treatment | Debtor's Obligation | Claims to be paid by Sale or Other | Secured Claim Remaining after Cure | Budgeted Payment by Debtor | Monthly Payments to be made by others | | |
| Class 1 Claim | ArborOne, ACA | Pay though Sale | $ 1,390,946.81 | $ 1,390,946.81 | | $0 | $0 | $ 1,599,588.83 | $ 1,390,946.81 |
| Class 2 Claim | First Reliance Bank | Satisfied through Settlement w/ R Cooke | $ 399,103.28 | $ 399,103.28 | | $ 5,633.60 | $ - | $ 391,000.00 | $ 363,630.00 |
| Class 3 Claim | Anderson Brothers Bank | Cure and paid by Daughters | $ 232,358.63 | $ - | $ 232,358.63 | $ - | $ 2,151.00 | $ 267,212.42 | $ 216,093.53 |
| Class 4 Claim | NBSC | Cure and Maintain | $ 52,712.00 | $ - | $ 52,712.00 | 835.13 | $ - | $ 60,618.80 | $ 49,022.16 |
| Class 5 Claim | Conway National Bank | Cure and Maintain | $ 51,979.00 | $ - | $ 51,979.00 | 416.66 | $ - | $ 59,775.85 | $ 48,340.47 |
| Class 6 Claim | Conway National Bank | Cure and Maintain | $ 20,015.00 | $ - | $ - | 490.88 | $ - | $ 23,017.25 | $ 18,613.95 |
| Class 7 Claim | Conway National Bank | Cure and paid by Daughters | $ 18,722.00 | $ - | $ - | $ - | 342.81 | $ 21,530.30 | $ 17,411.46 |
| Class 8 Claim | Conway National Bank | Cure and paid by Daughters | $ 16,653.00 | $ - | $ - | 784.37 | 784.37 | $ 19,150.95 | $ 15,487.29 |
| Class 9 Claim | Conway National Bank | Satisfied through Settlement w/ R Cooke | $ 13,624.65 | $ 13,624.65 | $ - | 832.01 | $ - | $ 15,667.60 | $ 12,670.32 |
| Class 10 Claim | Conway National Bank | satisfied through Settlement w/ R Cooke | $ 24,237.89 | $ 24,237.89 | $ - | 429.66 | $ - | $ 27,872.55 | $ 22,540.41 |
| Class 11 Claim | Nancy Pickelsimer | Cure and Maintain | $ 45,583.00 | $ - | $ 45,583.00 | 1,210.92 | $ - | $ 52,420.45 | $ 42,392.19 |
| Class 12 Claim | The Citizens Bank | Cure and Maintain | $ 28,853.00 | $ - | $ 28,853.00 | 2,769.04 | $ - | $ 33,180.95 | $ 26,833.29 |
| Class 13 Claim | The Citizens Bank | Cure and Maintain | $ 34,581.00 | $ - | $ 34,581.00 | | $ - | $ 39,768.15 | $ 32,160.33 |
| Class 14 Claim | JP Morgan Chase Bank | Cure and Maintain | $ 42,943.00 | $ - | $ 42,943.00 | 2,726.61 | $ - | $ 49,384.45 | $ 39,936.99 |
| Class 15 Claim | Anderson Brothers Bank | Cure and Maintain | $ 39,289.00 | $ - | $ 39,289.00 | 1,200.00 | $ - | $ 45,182.35 | $ 36,538.77 |
| Class 16 Claim | Horry County Treasure | Satisfied through Settlement w/ R Cooke. Balance paid in 1 year | $ 19,812.52 | $ 14,094.00 | $ 5,718.52 | 476.54 | $ - | $ 22,791.85 | $ 21,196.42 |
| Class 17 Claim | Citzens Bank | Cure and Maintain | $ 6,708.00 | $ - | $ 6,708.00 | 783.00 | $ - | $ 7,714.20 | $ 6,238.44 |
| Class 18 Claim | Ally Bank | Cure and Maintain | $ 5,706.00 | $ - | $ 5,706.00 | 630.23 | $ - | $ 6,561.90 | $ 5,306.58 |
| Class 19 Claim | Florence County | Pay though Sale | $ 7,388.05 | $ 7,388.05 | $ - | $ - | $ - | $ 8,496.26 | $ 6,870.89 |
| Class 20 Claim | Clarendon County Treasure | Cure and paid by Daughters | $ 7,162.23 | $ 7,162.23 | $ - | $ - | $ - | $ 8,236.56 | $ 6,660.87 |
| Class 21 Claim | Adminstrative claims | Pay though Sale | $ 70,000.00 | $ 70,000.00 | $ - | $ - | $ - | $ - | $ - |
| Class 22 Claim | Priority Claims | Pay | $ 46.00 | $ 46.00 | $ - | $ - | $ - | $ 52.90 | $ 42.78 |
| Class 23 Claim | Unsecured Claims | Pay though Sale | $ 50,000.00 | $ 50,000.00 | $ - | $ - | $ - | $ 150,000.00 | $ 363,630.00 |
| Class 24 Claims | Richard Cooke | Satisfied through Settlement w/ R Cooke | $ - | $ - | $ - | $ - | $ - | $ 1,500,000.00 | 0 |
| Total Claims | | | $ 2,578,424.06 | $ 1,976,602.91 | $ 546,431.15 | 19,218.65 | 3,278.18 | $ 4,409,224.58 | $ 2,742,563.95 |
| Total Secured | | | $ 2,458,378.06 | | | | | | |
| Net Equity | | | $ 2,132,176.13 | | | | | $ (205,501.13) | $ (569,140.77) |